# CASES DETERMINED

# August Term, 1927.

---

BOELTER, Respondent, vs. HILTON, imp., Appellant.

*September 14—October 11, 1927.*

*Principal and agent: False representation of agency: Grounds of liability toward person deceived: What constitutes representation: Evidence: Sufficiency.*

1. One who falsely represents to another that he has authority to act as agent for a third person is liable as on an implied warranty of authority or in an action for deceit, but is not liable on a contract made as a pretended agent. p. 5.
2. In an action by a tenant against a bank cashier whom he claimed leased a house to him as the agent of the owner, but from which he was dispossessed, the evidence, which failed to show that the cashier represented that he had authority from the owner to rent the house as agent, is *held* insufficient to support a judgment for plaintiff. p. 7.
3. One dealing with an agent known to be acting for a principal must, at his peril, ascertain the extent and nature of the agent's authority. p. 6.
4. The fact that the cashier delivered the key of the house to the plaintiff's agent in accordance with her request, and as an officer of a bank accepted moneys as rent which were credited to the owner's account, does not amount to a representation that he or the bank was authorized to make a lease, as he would have a right to believe that plaintiff's agent had the authority of the owner to receive the key for the purpose of inspecting the premises. p. 7.

APPEAL from a judgment of the county court of Winnebago county: D. E. McDONALD, Judge. *Reversed.*

The complaint alleges the corporate character of the defendant bank; that on or about the 30th day of September, 1925, "the plaintiff rented from the defendants National

Manufacturers Bank, a national banking corporation, and *H. C. Hilton,* a residence in the city of Neenah, at a monthly rental of $35 per month;" that the defendants held themselves out as agents of one Verbeck in the rental of the above mentioned residence in Neenah; that the plaintiff did apply at the National Manufacturers Bank, a national banking corporation, and from *H. C. Hilton,* its cashier, for the privilege of renting said residence; that this plaintiff deposited as security the sum of $5, and that the National Manufacturers Bank, a national banking corporation, and *H. C. Hilton,* its cashier, did accept said $5 and turned over to this plaintiff or his agent the key and gave to him the right to inspect said residence; that on the following day the plaintiff did pay an additional $30 to said National Manufacturers Bank and *H. C. Hilton,* which money was accepted by the National Manufacturers Bank and *H. C. Hilton,* and the key to the said residence was then turned over to said plaintiff or his agent; that thereupon the plaintiff moved his family into the residence and had been in said residence about ten days when an action for unlawful detainer was commenced against him and he was ejected from said premises; that by virtue of said ejectment the plaintiff was caused unusual and unnecessary expense totaling a considerable sum; that he was not able to find a residence for a period of time; that he was caused great annoyance and inconvenience; that he was unable to work at his trade for a period of time due to the said ejectment; that in addition to the above mentioned damage, and for a further and second cause of action, "this plaintiff has been greatly injured in his reputation by virtue of the ejectment proceeding."

The answer of the defendant *Hilton* admitted that the plaintiff obtained the key to the residence of H. C. Verbeck at the National Manufacturers Bank and moved his family into said residence and was ordered, in unlawful detainer proceedings, to vacate and did vacate; that the plaintiff left at the said National Manufacturers Bank the sum of $35 at

about the time mentioned in the complaint; that said amount was placed to the credit of H. C. Verbeck and remained there for a few days until said bank was notified by H. C. Verbeck that he would not accept the money, whereupon the sum was placed in escrow and later reclaimed by the plaintiff, who received the same back; denied that he held himself out as agent of the said Verbeck; denied that he at any time rented the premises.

There was a jury trial, and the jury found (1st) that Verbeck did not authorize *Hilton* to rent his house on or before the 30th day of September, 1925; (2d) that *Hilton* held himself out as agent of H. C. Verbeck in the rental of the Verbeck residence; (3d) that such conduct was the controlling cause of plaintiff moving into the Verbeck house; (4th) that the defendant *Hilton* in some capacity did, on or about the 30th day of September, 1925, rent the Verbeck residence to the plaintiff; (5th) that plaintiff used ordinary means and care to ascertain whether or not *Hilton* had the right or authority to rent the house to him; (6th) that the reputation of the plaintiff was injured in being removed from the Verbeck house; (7th) that $150 would reasonably compensate the plaintiff for his damages resulting in his removal from the Verbeck house; and (8th) that $150 was assessed as damages for injury to the reputation of the plaintiff by reason of being removed from the Verbeck house. Judgment was rendered accordingly, from which defendant appeals.

For the appellant there were briefs by *Velte & Molzow* of Neenah, and oral argument by *Chas. H. Velte*.

For the respondent there was a brief by *Keller & Keller* of Appleton, and oral argument by *L. Hugo Keller*.

ROSENBERRY, J. At the close of the evidence the defendant bank moved for a directed verdict in its favor, which motion was granted, and no question is raised by either party as to the correctness of that ruling.

It appears, stating the facts most strongly in favor of the plaintiff, that the defendant *Hilton* is cashier of the National Manufacturers Bank, in which the owner, Verbeck, was a depositor; that the bank customarily accepted payment of rent and passed the same to Verbeck's account; that prior to the 30th of September, 1925, the key to the Verbeck place had been left at the bank. It further appears that the Boelter and Dalton families were living in one house owned by Mr. Oelfke; that notice to vacate had been given and that both families were looking for a new home. In the course of their search they were directed to a house on Columbia avenue, but the owner had not finished painting it and he told them that there was an empty house on Franklin avenue, which proved to be the Verbeck house; that they found out who had lived in the Verbeck house previously and were told by the former occupant that the house was for rent; that the key had been left at the bank, and that they had paid $35 a month for the premises. The negotiations were carried on by Blanche Dalton, in the presence of her mother, who states the facts as follows:

"On the 30th day of September, 1925, I went to the bank with my daughter. She went to the window. I stood by her side and she asked if the house was for rent on 129 Franklin avenue, and he said 'Yes.' And she said, 'Can we take the key?' and he said 'Yes.' She asked *Mr. Hilton,* cashier of the bank. She told him we would like to look at the house and that we wanted to rent a house, and he handed us the key. She says, 'Well, how much is the rent?' and he said the family previously had paid $35, and she said, 'Well, can we take the key?' He passed the key over and we went out."

After inspecting the house, Mrs. Boelter, the wife of the plaintiff, returned and told them they would like to rent the Verbeck house, that they had looked at it, and asked *Mr. Hilton* if she could deposit $5 and send the balance down the next day. He said "Yes," accepted the $5, gave

her a duplicate deposit slip therefor, and the next day she sent down the $30 and received a duplicate deposit slip for that deposit. Upon both slips the word "rental" was written. The defendant *Hilton's* version of the affair does not differ substantially from that of the plaintiff. He said that Blanche Dalton asked him if she could have the key to Mr. Verbeck's home and that he gave it to her, and she asked how much the rental was and he told her that the family which had occupied it previously had paid $35 a month. There is no denial of the fact that the bank was authorized by Mr. Verbeck to accept payments of rent for him in the ordinary course of business. It does not appear how or under what circumstances the key to the Verbeck house was left in the possession of the bank. It seems quite probable from the fact that Mr. Verbeck was in Ohio that it had been left by the previous tenant; that plaintiff or his agents made no inquiry as to whether *Mr. Hilton* or the bank had any authority to rent the Verbeck house. It is quite clear from their testimony that when they went to the bank they had been advised that the house was for rent and went there for the purpose of getting the key to inspect the premises. When they came there *Mr. Hilton* did not inquire by whose authority they were entitled to receive the key, but upon their request or demand gave it to them. When they came in and paid the money on account of the first month's rent he accepted it and passed it to the account of Mr. Verbeck in the bank.

The question is, Does this amount on the part of *Hilton* to a representation that he was authorized by Verbeck to rent the premises in question? There is no dispute as to the fact that he had no such actual authority. *Oliver v. Morawetz,* 97 Wis. 332, 72 N. W. 877, establishes the proposition that a person who represents to another that he has authority to do an act as agent when in fact he has no such authority is liable as on an implied warranty of authority, or

in an action for deceit, according to the facts of the particular case.  Wisconsin in common with many other states no longer adheres to the doctrine that the agent is liable upon the contract itself.  Some of the earlier cases so stated the law.  See *Fredendall v. Taylor,* 23 Wis. 538.  The statement was repeated in *Wisconsin Farm Co. v. Watson,* 160 Wis. 638, 152 N. W. 449, the writer of the opinion in that case apparently overlooking the case of *Oliver v. Morawetz, supra,* which changed the rule.  A study of the cases leads to the conclusion that the former statement meant no more than that in certain classes of cases the extent of the agent's liability was measured by the contractual obligation which he assumed to enter into on behalf of his principal and therefore constituted a proper measure of damages.  The ground of his liability is the false representation or his implied warranty of authority according to the facts in each case, and we adhere to the rule of *Oliver v. Morawetz, supra.*

The defendant *Hilton* personally or as cashier of the bank neither did or said anything that was not in accord with the truth.  If he was guilty of a breach of duty to any one it was to Verbeck, a depositor, when he handed out the key to the Verbeck property without ascertaining the authority of the party to whom he handed it to receive it.  But he owed the plaintiff no duty in that respect.

It is a rule that a person dealing with an agent known to be acting for a principal must at his peril ascertain the extent and nature of the agent's authority.  This is most frequently applied, of course, in cases where the party dealing with the agent is making a claim against the principal.  Plaintiff's agents conceded that when they went to the bank to ask for the key they were already apprised of all the facts that they ever ascertained, and that was that the premises were for rent; that the former tenant had paid $35 per month; that the key was in the custody of the bank, and that rent would be received by the bank on behalf of Verbeck.  They made no inquiry whatever as to the right of either the bank or

*Hilton* to make a lease of the premises. *Mr. Hilton,* acting for himself or the bank, may well have thought that they were there with authority from Verbeck to receive the key for the purposes of inspection.

If the defendant *Hilton* is liable at all it must be upon an implied warranty. See note to *Haupt v. Vint* (68 W. Va. 657, 70 S. E. 702), 34 L. R. A. N. s. 518. All of the cases which we have been able to find are cases in which the agent expressly represented himself as having authority from his principal to act. We find no case where an agent has been held liable under circumstances such as are presented here, either upon deceit or in assumpsit. It is apparent here that every word which *Hilton* said and every act which he did was consistent with the performance of his duty as cashier of the bank. He did not accept the money for himself but for the bank. The receipts which he issued were not issued by him personally but in the shape of duplicate deposit slips issued by the bank. The plaintiff was given no receipt signed by defendant *Hilton* as agent. The money which was paid was never in his custody as an individual. It was passed to the account of Mr. Verbeck, depositor. There is nothing to show that he held the key to the premises otherwise than as an officer of the bank, and we search the record in vain for any circumstance in this case which warrants a finding that *Hilton* held himself out as the agent of Verbeck with authority to lease the premises in question. He certainly did not do so expressly, and the mere fact that he truthfully answered questions propounded to him as an officer of the bank, and, assuming without inquiry that the person requesting it had authority to receive the key, surrendered the key upon request of the plaintiff or his agents, is certainly not holding himself out as agent having authority to make a lease of the premises.

Other questions are raised in regard to the proper measure of damages. The case was tried partly on the theory that there was contractual liability and partly on the theory that

there was liability in tort. Many errors were assigned and many questions raised, none of which we find it necessary to discuss in view of our conclusion upon the main question.

*By the Court.*—Judgment appealed from is reversed, with directions to dismiss the complaint.