Wisconsin General Finance Corporation, Respondent,
vs. Park Savings Bank, Appellant.

*May 10—June 20, 1932.*

The cause was submitted for the appellant on the brief of *Wheeler & Witte* and *John Schlintz,* all of Milwaukee, and for the respondent on that of *Walter Drew* and *Alvin Juedes,* both of Milwaukee.

WICKHEM, J.   On November 19, 1929, the date upon which the check in question was drawn, Edward Baumgartner was state distributor for the Peerless Motor Company, a manufacturer of automobiles.   Baumgartner operated as a sole trader under the firm name of Baumgartner Motor Sales and also Baumgartner Motor Car Company. He carried a checking account in the Park Savings Bank, the defendant in this action.   This account was kept in the name of the Baumgartner Motor Company.

Automobiles were consigned by the Peerless Motor Company to him through the Nicholson Universal Steamship Company to the city of Milwaukee.   The Peerless Company forwarded bills of lading with sight drafts attached to the defendant Park Savings Bank.   When Baumgartner desired to have one of these automobiles he went to the bank, paid the sight draft for the particular automobile desired, received the bill of lading, and thereby obtained delivery of the car.   On the date above mentioned Baumgartner was desirous of releasing an automobile in this manner, and, not having the money to do so, negotiated a loan from the plaintiff Finance Company.   This company drew the check in question payable to the defendant bank.   At the same time Baumgartner signed and delivered to the plaintiff an instrument assigning to the Finance Company as security the automobile which he desired to release.   Simultaneously with the delivery of the check to Baumgartner, the plaintiff

company delivered to him a letter addressed to the defendant bank, which read as follows:

"Inclosed please find our check in the amount of $879 covering payment of Peerless Motor Car Invoice No. 407, on sight draft and bill of lading for Peerless Sedan C-6178867. Kindly forward us paid draft, returning with it the inclosed invoice properly stamped paid. If there are any charges for this service, kindly advise so we may remit."

Baumgartner was instructed by the Finance Company to deliver this letter and check to the defendant bank. Instead, Baumgartner kept the letter in his possession, placed his own indorsement upon the check, and presented the check for deposit to the defendant bank, together with other checks. The proceeds thereof were credited to his checking account under the name of Baumgartner Motor Company. He did not draw any check on this account to release the Peerless car in question, and the same was not released, but the bill of lading and sight draft continued to be held by the defendant bank with the sight draft unpaid.

Between the dates of November 19th and December 3d Baumgartner made deposits in the defendant bank totaling more than $4,000, but also drew a large number of checks upon the bank, and on December 3d had a balance of only $51.56. The check given by the Finance Company and delivered to Baumgartner was credited through the Milwaukee clearing house to the Marine National Bank on November 20, 1929, and on the same day presented by the clearing house to the First Wisconsin National Bank and payment made by said bank.

Prior to the transaction heretofore described, Mr. Zillig, one of the officers of the Park Savings Bank, made inquiries in regard to a similar check that accidentally came to his attention at the bank. He called up the plaintiff Finance Company and instructed them "that in the future if they

wanted any *particular* draft with bill of lading attached surrendered upon the payment of their check, they should mail them directly to us with a letter of instructions, we would stamp that paid, return it to them through the mail."

The defendant contends that the failure of the plaintiff, after notice, to use due diligence in transmitting the check and letter of instructions to the bank, thereby resulting in damage to the defendant, is a bar to plaintiff's recovery. The gist of this contention is that the defendant bank, having instructed the plaintiff in all such situations to mail the check, together with a designation of the particular car which it was desired to release, was entitled thereafter to rely upon plaintiff adopting this course of procedure; that when plaintiff elected to intrust the letter of instructions and the check to Baumgartner, it made Baumgartner its agent, and that it is in no position to complain of a fraud or imposition practiced by Baumgartner. It is further contended that the plaintiff was guilty of negligence in failing to make any further investigation of the situation; that its check had been cashed by the First Wisconsin National Bank on the 20th of November; that it had not received the bill of lading and the receipted sight draft, and that it must or should have suspected prior to December 3d that something had gone wrong in the transaction; that had it made proper inquiry and notified the bank or inquired at the bank, the bank would have been in a position to charge Mr. Baumgartner's account and thus avoid a loss. It is further contended that the action of the bank in crediting plaintiff's check to Baumgartner's account was not negligent. In support of this it is contended that the check was received by the teller in the ordinary course of business and in the usual manner, and that it was the custom of banks in general, and especially local banks, merely to examine the checks to see that the depositor himself had properly indorsed the check.

In dealing with the problem presented by this case, it seems to us that the starting point is somewhat different from that adopted by the defendant. The consideration of this case must start with the proposition that the bank received and credited to Baumgartner's account a check which was made payable to its own order. This is not merely a case where an agent, intrusted with a letter of instructions, fails to present the instructions and is thereby enabled to impose upon the person to whom he is sent. Had this check been payable to Baumgartner, there could be no question as to the validity of the defendant's contention. In such a case secret limitations upon the authority of Baumgartner could not operate to the prejudice of the defendant bank, in view of the fact that plaintiff had intrusted to him a negotiable instrument payable to his order. But these are not the facts. The check in question was payable to the defendant bank. Baumgartner had no appearance of authority to cash it or to deal with it as his own. While the defendant bank was named as payee of the check, it had had no dealings with the drawer out of which it would be entitled to a beneficial interest in the check. Under such circumstances the check upon its face imported the ownership by the plaintiff of the moneys represented in it. *Apostoloff v. Levy,* 170 N. Y. Supp. 930; affirmed, 186 App. Div. 767, 174 N. Y. Supp. 828; *Camp v. Sturdevant,* 16 Neb. 693, 21 N. W. 449; *Hathaway v. Delaware County,* 185 N. Y. 373, 78 N. E. 153, 13 L. R. A. N. s. 273, 113 Am. St. Rep. 909; *Sims v. United States Trust Co.* 103 N. Y. 472, 9 N. E. 605; 19 Columbia Law Review, 338; 20 Columbia Law Review, 749, at 759.

In *Sims v. United States Trust Co., supra,* it is stated:

"The use of the defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its custody and place them under its control, and nothing fur-

ther than this was inferable from the language of the check. . . . The defendant could have refused to receive the deposit, or act as Dr. Sims' agent in transferring the funds from one custodian to another; but having accepted the office of so doing, it was bound to keep Dr. Sims' moneys until it received his directions to pay them out. The language of the check making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them. They could not safely pay out such funds except under the direction of their lawful owner."

In addition to this it is to be noted that the information the defendant bank had concerning checks previously issued or drawn by the plaintiff Finance Company in relation to the business of Baumgartner was to the effect that they were sent for the purpose of lifting bills of lading and as part of the process of releasing cars for sale. The fact that it is in accordance with the usual course of banking to look merely to the depositor's indorsement and not to examine the face of the check is immaterial even if established. It appears from the testimony of the very witness who was relied upon to establish this custom that the custom is based upon reliance on the depositor's solvency, and involves the expectation that the bank will make good upon the check in case of any irregularity, and then charge back the depositor's account. This being the extent of the custom, it can have no legal consequences so far as the rights of the plaintiff are concerned.

The next contention of the defendant is that there was a lack of diligence on the part of the plaintiff, after the issuance of the check, in notifying the defendant bank of Baumgartner's breach of trust in time to enable the bank to charge Baumgartner's account and thus avoid damage. It is not disputed that the first knowledge that the plaintiff Finance Company had of the misapplication of the check was on the 4th of December, 1929, which was too late to prevent

damage to the defendant bank, Baumgartner's account having been almost entirely depleted by that time. Hence the question must be whether there was anything in the situation obligating plaintiff to act between the dates of November 19th and December 4th. It is our conclusion that there was not, at least as a matter of law. In the first place, the delay on the part of Baumgartner to return the bill of lading and sight draft would indicate quite as conclusively that the check had not been used at all as that it had been misused, or that he had secured the release of the bill of lading and sight draft but through some excusable circumstance had failed to transmit them. In the second place the plaintiff company was entitled to believe from the form of its check that the defendant bank did not credit Baumgartner's account with the proceeds of the check, or use its proceeds in any other way than to lift the bill of lading. We think the finding that plaintiff was guilty of no negligence is sustained by the evidence.

Aside from this, we think it clear under the doctrine of *Endlich v. Bank of Black Creek,* 200 Wis. 175, 227 N. W. 866, that plaintiff's recovery in this case does not depend upon the same considerations as exist where a drawee seeks to recover money paid out on a forged instrument. In referring to such cases, this court, in the *Endlich Case,* said:

"The right to recover in such cases rests upon equitable principles to no inappreciable extent. That is not the case here. The plaintiff was the owner of this certificate of deposit. It represented a debt owing to him by the Bank of Black Creek. No laches on his part short of the statute of limitations could defeat his right to recover."

Had this action been prosecuted prior to the enactment of the Code, it would have been an action in tort for conversion, or one in assumpsit for money had and received by the defendant for the use of the plaintiff. In case of the waiver of tort and suit in assumpsit, the basis of action would still be a conversion by the defendant. Negligence

upon the part of the plaintiff in calling to defendant's attention the fact of conversion in time to enable defendant to escape without loss would certainly not be a defense to such an action. However, even if negligence were held to be material and were established, defendant would be met by the doctrine of *Wussow v. Badger State Bank,* 204 Wis. 467, 234 N. W. 720, 236 N. W. 687, in which the court held, in the case where the drawee bank had cashed forged checks, that before the plaintiff-drawer's negligence can become material it must appear that the bank itself was not negligent. Since the evidence sustains the conclusion that the bank was negligent, plaintiff's negligence could not be material or bar recovery, even if the doctrines relating to forged instruments and forged indorsements were to be applied to this situation.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.