MOTOR CASTINGS COMPANY, Appellant, vs. MILWAUKEE COUNTY BANK, Respondent.*

*March 9—April 12, 1949.*

---

* Motion for rehearing denied, with $25 costs, on June 7, 1949.

496

For the appellant there were briefs by *Rix, Kuelthau & Kuelthau,* attorneys, and *G. Carl Kuelthau* and *Norman C. Skogstad* of counsel, all of Milwaukee, and oral argument by *Mr. G. Carl Kuelthau* and *Mr. Skogstad.*

For the respondent there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

FAIRCHILD, J.   The trial court erroneously found that the evidence was insufficient to impose liability upon the respondent bank.   The dealing between the appellant and respondent was only concerned with the furnishing of money by appellant to pay for war-savings bonds, which were issued in the name of the employee specified by the respondent.

This plan devised and adhered to by appellant was to send a check to cover exactly the cost of the bonds to be purchased at a given time.   These checks were always made payable to the order of the bank and at no time was the bank authorized to deliver any cash to a messenger or agent.   The respondent bank respected this arrangement in all transactions from its beginning and while the checks for bonds were presented by Mr. Knoll, who preceded the respondent Carlsen in that position, and thereafter until May 2, 1944.   At that time instead of issuing savings bonds for a check of $37.50 respondent gave to Carlsen on his request that amount in cash.   There was then a diversion of appellant's money to Carlsen.   *Wisconsin General F. Corp. v. Park Savings Bank,* 208 Wis. 437, 243 N. W. 475.   Thereafter without the consent of appellant and at frequent intervals respondent delivered cash to Carlsen instead of bonds until it had diverted upwards of $11,000 before

appellant discovered the wrong. Had the appellant discovered the peculations of its agent earlier than it did, the loss, of course, would not have been as great as it was. But it was the duty of the respondent to retain in its possession the moneys not necessary to cover the cost of bonds to be purchased until it had some instructions from appellant with respect thereto.

While it may be said that less haste in dispatching the matter of signing checks presented by its employees might have served the best interests of all concerned, the fact remains that at all times the respondent ignored its legal duty to retain the overplus of cash on checks payable to its order for the drawer of the check. The plan constantly followed of using the respondent as payee of the checks must be held to fix a definite duty on the bank to lodge the moneys in its custody and keep them under its control. Nothing further than this was inferable from the language of the check. The respondent bank could have refused to cash the check; but having accepted the check, it was its duty to hold appellant's money until it received direction to pay it out. *Sims v. United States Trust Co.* 103 N. Y. 472, 9 N. E. 605; *Wisconsin General F. Corp. v. Park Savings Bank, supra.*

In applying the rules of law to the facts of this case, we are impressed that the trial court did not give full weight to the fact that respondent failed to perform a duty required and imposed on it by a rule of commercial law. *Wisconsin General F. Corp. v. Park Savings Bank, supra.* The failure of the respondent bank to hold the funds until advised by the owner is the source of the trouble and gave respondent Carlsen the opportunity to make away with the property the bank should have withheld for appellant. The worth of this rule is apparent even upon slight reflection. Had the rule been followed by respondent the wrong would have been prevented and the failure of the transgressor to accomplish his purpose might have overcome his temptation.

The bank had a positive duty to retain cash over and above the cost of the savings bonds. The language of the check even without the voucher slips was, together with the rule of law, such that respondent had no right to dispose of the money without instruction from the drawer of the check. The bank's act was a greater fault and was a greater departure from a plain duty than can be laid at the door of the drawer of the check whose fault, if any, was due either to reliance on the bank or its failure to note that some of the checks as drawn by the defaulting clerk were not divisible by $18.75.

The findings do not support the conclusions. Even if an officer of the appellant made written complaint to the district attorney charging respondent Carlsen with embezzlement of its funds, that procedure should not affect the result here. The criminal prosecution was not an action to try title. The money taken by Carlsen was identified erroneously in that case as belonging to appellant when received from respondent. The wrongful act of the respondent Carlsen was the important thing for consideration there. The title to the money was not in appellant and the fact that it was so considered by the prosecuting officer did no harm to respondent. The prosecution should have been under another section of the statutes instead of embezzlement. However, in that case the rights and duties were public for they governed the relation alone of the state with Carlsen, and related to his obtaining the money from the bank by false pretense or by privy and false token. The remedy was for the violation of a public rule of conduct. It was a criminal action and was between the state and Carlsen. Its purpose was not to protect a private right but was designed to effect or preserve the good order of the state and to enforce those duties of the individual toward the state.

As pointed out, it was the duty of the bank to recognize and preserve the right of appellant to the excess of cash. This was not done and because it was not the appellant is entitled to the equivalent of what the bank's breach of duty has taken from it.

It was also suggested by the trial court that Carlsen was acting within his apparent authority. Therefore his principal, appellant here, should be held for any loss. It is a well-established rule that when a principal puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud, the principal should stand the loss. This is true even when the agent is acting against his principal's interests. Restatement, 1 Agency, p. 582, sec. 261. However, Carlsen was not acting within his apparent authority. The only authority—apparent or actual—which he had was to receive bonds. Over a long period of time both Carlsen and his predecessors had come to the bank with a check for the exact amount of the bonds. When Carlsen presented to the teller at the savings-bond window a check larger than the amount necessary for the bonds and when she had to send him to another window to get it cashed, an unusual event occurred. Carlsen had never before dealt in cash for his employer. He was not an officer of the company, a fact which might have given him apparent authority to draw out funds. Nor were the checks drawn in such a way as to lead the bank to believe he had authority to draw out cash since they were made payable to the respondent bank itself. It is clear that Carlsen was not acting within his apparent authority.

Carlsen is indebted to respondent, and judgment for the proper amount should go in respondent's favor against him according to the demand of the cross complaint.

*By the Court.*—Judgment reversed and cause remanded with instructions to enter judgment in appellant's favor against respondent bank and for judgment against Carlsen in favor of the bank.