Mattice, Respondent, vs. Equitable Life Assurance Society of the United States, Appellant.

*June 3—June 28, 1955.*

For the appellant there was a brief by *Rieser, Mathys, Mc-Namara & Stafford* of Madison, and oral argument by *Willard S. Stafford.*

For the respondent there was a brief by *Langer & Cross* of Baraboo, and oral argument by *Clyde C. Cross* and *H. M. Langer.*

BROADFOOT, J.  Upon this appeal the defendant relies upon language in the case of *Hansche v. A. J. Conroy, Inc.,* 222 Wis. 553, 269 N. W. 309, wherein this court said (pp. 560, 561):

"Three elements are necessary to establish apparent agency: (1) Acts by the agent or principal justifying belief in the agency.  (2) Knowledge thereof by the party sought to be held (in the present case, appellant).  (3) Reliance thereon by the plaintiff, consistent with ordinary care and prudence. *Domasek v. Kluck,* 113 Wis. 336, 339, 89 N. W. 139. . . .

"The apparent authority for which the principal may be liable must be traceable to him, and cannot be established by the acts and conduct of the agent. The principal is only liable for that appearance of authority caused by himself. *Mary-*

*land Casualty Co. v. Moon,* 231 Mich. 56, 203 N. W. 885, 887; *Berryhill v. Ellett* (C. C. A.), 64 Fed. (2d) 253, 256. If words or conduct of the agent are relied upon, it must be shown that the principal had knowledge of and acquiesced in them. 1 Mechem, Agency (2d ed.), p. 513, sec. 725; *Berryhill v. Ellett, supra,* at p. 256, and cases cited."

The plaintiff relies in particular upon the following sections from the Restatement, 1 Agency:

Page 582, sec. 261—"A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

Page 583, sec. 262—"A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him, under the rule stated in sec. 261, is not relieved from liability by the fact that the apparent agent acts entirely for his own purposes, unless the other has notice of this."

These rules were approved by this court in *Ripon Knitting Works v. Railway Express Agency,* 207 Wis. 452, 240 N. W. 840, and *Motor Castings Co. v. Milwaukee County Bank,* 254 Wis. 493, 36 N. W. (2d) 687. As general rules of the law of agency they are correct. In the cases where cited they were applicable and there was no need to apply other rules of the law of agency that must necessarily be looked to in other cases. They are too broad in scope to cover every situation. One rule of agency that has been repeatedly stated by this court appears in *Sell v. General Electric Supply Corp.* 227 Wis. 242, 278 N. W. 442, as follows (p. 248):

"The burden of proof to establish the apparent authority of Cooke was upon the plaintiffs. *Smith v. Starkey,* 203 Wis. 56, 62, 233 N. W. 576; *Commonwealth Telephone Co. v. Paley,* 203 Wis. 447, 449, 233 N. W. 619; *Hansche v. A. J. Conroy, Inc., supra,* p. 562. In *Commonwealth Telephone Co. v. Paley, supra,* the court said:

" 'It is the rule that a person dealing with an agent known to be acting for a principal must at his peril ascertain the extent and nature of the agent's authority. . . . *Boelter v. Hilton,* 194 Wis. 1, 215 N. W. 436; *Pluto Powder Co. v. Cuba City State Bank,* 153 Wis. 324, 141 N. W. 220. However, this rule is to be read in connection with another rule stated in *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375, quoted approvingly in *Voell v. Klein,* 184 Wis. 620, 622, 200 N. W. 364, that "if a third person, because of appearances for which the principal was responsible, believes and has reasonable ground to believe that the agent possessed power to act for the principal *in the particular transaction,* if such third person was, in the exercise of reasonable prudence, justified in believing that the agent possessed the necessary authority, then the principal is responsible to such third person the same as if the agent possessed all the power he assumed to possess." ' " (Emphasis supplied.)

The main issue presented by this case is whether or not the agent had apparent authority to bind his principal in the particular transaction. The particular transaction was the borrowing of money on behalf of the principal by the agent. Accordingly, we must look to the rules dealing with the apparent authority of an agent to borrow money on behalf of his principal.

In Restatement, 1 Agency, p. 178, sec. 74, the law with respect to an agent borrowing money on behalf of his principal is stated as follows:

"Unless otherwise agreed, an agent is not authorized to borrow unless such borrowing is usually incident to the performance of acts which he is authorized to perform for the principal."

In 2 C. J. S., Agency, p. 1294, sec. 110, the rule is stated as follows:

"Like other specific powers of an agent, the power to lend or borrow money is not to be inferred without clear evidence of such a grant, and must be either expressly conferred or necessarily implied from the authority granted, not being

subject to implication from a mere general authority, unless the character of the business or the duties of the agent are such in nature as to render it reasonably requisite for him to borrow or lend in order to carry out his instructions and the duties of his office, although, of course, if the agent is clothed with ostensible authority to borrow, transactions of that nature within the scope of his apparent powers will be sustained. Representations by the agent himself are insufficient as a basis for any such ostensible power. While a course of conduct of the principal in allowing the agent to borrow on his account may, under the general rules as to a course of conduct, be a sufficient foundation for the power to borrow, no such power is to be implied from a power merely to manage or act for the principal in his business generally or in other specific matters, unless such authority is reasonably necessary to enable the agent to execute his authority, and then only within the limits of such necessity; such an agent is without the authority to pledge the principal's credit for future payments, and a mere power of management of the principal's business or property, even though accompanied by authority to purchase goods on credit, does not suffice to establish an implied authority of borrowing.

"The power being held not to flow by implication from such a broad and general power as that of management, it is, of course, even more to be expected that the courts will hold it, as they do, not to be implied from other more limited mandates such as a power to lend, or a power merely to buy or sell property, or to make deposits and draw or indorse negotiable paper. . . ."

2 Am. Jur., Agency, p. 122, sec. 153, gives the rule as follows:

"Authority to Borrow on Principal's Credit.—If the transaction of a business carried on by an agent for his principal requires the exercise by the agent of the power to borrow money in order to carry it on, then such power is impliedly conferred as an incident to the employment; but the fact that the act proposed is more convenient or advantageous or more effectual in the transaction of the business provided for does not afford a sufficient ground for the inference of such a

power; it must be practically indispensable to the execution of the duties really delegated, in order to justify its inference from the original employment. This is, in substance, the rule adopted by the American Law Institute, which is to the effect that unless otherwise agreed, an agent is not authorized to borrow upon the principal's credit unless such borrowing is usually incident to the performance of acts which he is authorized to perform for the principal. If there is no necessity for an agent to borrow money to effect any purpose of the agency, it will not be presumed, without evidence, that it is proper or usual, in the ordinary course of the business, for him to do so.

"Merely placing one in charge of a sales agency of a manufacturing concern with supervision of sales and local agents does not confer the implied power to borrow money for the concern; and it is immaterial that the principal is a corporation. Nor does authority to discount a note include the authority to borrow by giving the note as collateral security. Likewise, in the absence of express authority, a commercial traveler has no implied authority to borrow upon the credit of his principal. Nor does the mere power to buy personal property imply power to borrow funds with which to make payment. In fact, it has been held that power conferred upon an agent to manage real estate, execute deeds and mortgages and the necessary promissory notes, and pay taxes, and generally to act as fully as the principal might do personally, does not include authority to borrow money on the credit of the principal with which to pay the taxes."

In the case of *Pluto Powder Co. v. Cuba City State Bank,* 153 Wis. 324, 141 N. W. 220, the plaintiff was a manufacturer of explosives with headquarters in New York. It maintained a storage magazine for these explosives in Cuba City. One Robinson was employed as a representative of the company at Cuba City to make sales of the goods. The explosives were shipped in carload lots, freight prepaid, to Pluto Powder Company at Cuba City. The bills of lading were sent to Robinson and he received the shipments from the railroad company, placed them in the storage magazine, and sold the same to mining companies and others, reporting the sales

to the office of plaintiff in New York. Invoices were sent to purchasers by plaintiff from its offices. Purchasers were to remit to the office of the plaintiff although some small sales were made for cash and the money collected in such instances by Robinson. He also had authority to collect from two mining companies which desired to deal directly with him. On January 28, 1909, Robinson began indorsing checks in the name of the plaintiff and obtaining money thereon at the defendant bank. On April 30th, Robinson, without authority, drew a draft for $200 upon a certain mining company, signed plaintiff's name thereto, delivered the same to the defendant bank, and obtained the amount thereof. Plaintiff brought action to recover from the defendant the amount of the checks and draft paid by the defendant bank to Robinson. This court there held that the facts that an agent had possession of the goods of his principal for sale, that he was accustomed to receive checks for goods sold payable to his principals and sometimes collected money on sales, that he receipted for goods and also for moneys collected in the name of the principal and had authority to employ help, to incur expense for livery, did not clothe such agent with apparent or implied authority to indorse the principal's name upon checks so received or to draw drafts in the name of the company. In that case the company first discovered on April 30th that Robinson was so acting. It then made an investigation, discovered the defalcations, and discharged Robinson. The bank was held liable for the amount of the checks and the sight draft. The court quoted with approval from Tiedeman on Commercial Paper, that the presumption of the law is more strictly opposed to an implied authority to execute and negotiate commercial paper than to anything else and the rule is strictly enforced that the authority to execute bills and notes as agent will not be implied from an express authority to transact some other business unless it is absolutely necessary to the exercise of the express authority.

In the case of *Smith v. Starkey,* 203 Wis. 56, 233 N. W. 576, 13 farmers agreed to construct an electric line to their farms and to purchase electric current for their respective uses. Each was to contribute to the cost of constructing the line and for current purchased according to an agreed plan. One of their number was selected to make collections and to pay the cost of construction and for current purchased. Two of the group failed to pay the cost of construction. Their agent paid the contractor and this resulted in an overdraft at the bank. Later, to make up the overdraft, he executed a note to the bank signed "Farmers Elec. Line." Thereafter the bank went into receivership and the receiver brought suit against the 13 farmers to recover from them on said promissory note. The *Pluto Powder Co. Case, supra,* was cited with approval, and it was held that the rule that persons with notice that they are dealing with an agent are bound to inform themselves as to the extent and limitation of his authority is strictly enforced with respect to the execution and negotiation of commercial paper, and authority of an agent to execute a note will not be implied merely from the fact that he had general power to manage the business of his principal unless the borrowing of money and the issuance of a negotiable note was necessary to the exercise of the power conferred by the principal on the agent. The receiver was not permitted to recover from the appellants.

It will be noted in the above cases that the rule is relaxed where it is absolutely necessary for the agent to borrow money on behalf of his principal in order to carry out the purpose of the agency or if it is usual in the ordinary course of the business for him to do so.

It is conceded that Schroeder had no actual authority to borrow money on behalf of the defendant. There is no testimony in the record tending to show that it was absolutely necessary for Schroeder to borrow money in order to sell insurance and annuities, nor is there any evidence in the

record tending to show that it is customary or usual in the insurance business for agents to borrow money on behalf of insurance companies. Authority to borrow money would carry with it the authority to execute notes on behalf of the principal. There is sufficient evidence in the record that Schroeder made the representations claimed by the plaintiff to justify the affirmative answer of the jury that he did so represent to the plaintiff, but representations of the agent alone cannot be the basis for a finding of apparent authority. Apparent authority must be traceable to the principal. We can find no evidence in the record of any acts or representations on the part of the defendant that gave any appearance of authority to Schroeder to borrow money. The defendant was not in the business of borrowing money, it had not authorized Schroeder to borrow money, nor is there any evidence that Schroeder had borrowed money from prospective buyers of insurance or anyone else to the knowledge of the defendant.

Under the authorities and cases above cited, we are forced to hold, from the record before us, that there was no evidence to support the determination by the jury that Schroeder was acting with apparent authority when he borrowed the money from the plaintiff. Since Schroeder did not have actual or apparent authority to bind the defendant, the plaintiff cannot hold the defendant.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss the complaint.