Charles L. GUNN et al., Appellants,

v.

Ruben SCHAEFFER et al., Appellees.

No. 6705.

Court of Civil Appeals of Texas, El Paso.

May 3, 1978.

Howard Jefferson Gibbs, El Paso, for appellants.

Mayfield, Broaddus & Perrenot, Francis C. Broaddus, Jr., James B. McIntyre, El Paso, for appellees.

## OPINION

OSBORN, Justice.

This summary judgment case involves the authority of an apartment house manager to act for the owners of the apartments in borrowing money and issuing short term certificates to evidence such indebtedness. The trial Court concluded that the owners were not liable and granted the motion for summary judgment. We affirm.

The Appellants were residents of an apartment complex known as Sagewood Apartments. The complex is owned by Sagewood Associates, Ltd., a Texas limited partnership, whose general partners are Mason & Schaeffer, Inc., Ruben Schaeffer and John D. Mason. From September, 1972, until June, 1976, Mr. and Mrs. Nick Bikos were managers of the apartments. Shortly before taking this position, they had moved to El Paso from Indiana where Mr. Bikos had operated a bar and spent considerable time gambling. He still owed about $18,000.00 in gambling debts when they left Indiana and was under considerable pressure to pay off these debts. As a result of heart problems which had disabled him, Mr. Bikos received social security disability payments. It was agreed that his wife would be hired as manager of the apartments and the entire salary paid to her, so as not to affect his social security income. Nevertheless, both Mr. and Mrs. Bikos actually served as apartment managers. They rented apartments, collected rent, made deposits and provided for necessary maintenance. They had no authority to write checks on the account where the rent money was deposited.

Beginning in December, 1972, Mr. Bikos permitted some tenants who desired to do so to pay a year's rent in advance and receive a small discount on their normal monthly payments. Rather than depositing the year's rent, he deposited one month's rent and kept the remainder which he used to pay on his gambling bill back in Indiana, or to pay personal living expenses in El Paso, or to provide funds for his current gambling operations. As the advance rental plan spread among the tenants, he had more advance money to use to pay the monthly rent of those whose money he had pocketed for himself in prior months.

Seeing how easy it was to obtain advance rentals, and as his need for more funds increased to meet the rental payments of those who had already paid in advance, Mr. Bikos devised a plan to sell short term savings certificates to the tenants. These certificates were issued in the name of Sagewood Apartments, Inc., and bore the name of Nick Bikos as manager and a fictitious name signed by Mr. Bikos as treasurer. The certificates provided for interest in excess of that paid by any bank or savings association.

Like most such plans, this one concluded with Nick Bikos being indicted for felony theft and the owners of the apartments being sued by the three Appellants in this case for $20,200.00 which they had paid for the worthless certificates. They alleged a conspiracy "by fraud and deceit to swindle, cheat, embezzle and convert from the Plaintiffs" the amounts paid for the purchase of the certificates of indebtedness. They also alleged that Nick Bikos was the agent, servant and employee of Defendants, who were responsible for his sale of the certificates held by Appellants.

The Appellees moved for summary judgment on the grounds that the wrongful and illegal acts of Nick Bikos were solely for himself, without authority from or knowledge of the Appellees who contended that they were not responsible for his unauthorized acts. They filed as supporting proof the deposition of Mr. Bikos in which he acknowledged the illegal scheme, but testified quite frankly that it was all his idea to try to raise money to pay gambling debts. When asked if he was not concerned about the fact that word of the scheme might get to Mr. Schaeffer or his corporation, he said: "Very concerned. Very concerned. But the other trouble I was in was way bigger

than that concern." He testified that he had no authority to issue the certificates, that the owners never knew about his scheme, and that they never received any of the funds. He said that he acted on his own and no one else was involved, although he admitted that when he sold the certificates, he represented to the purchasers that the management of the apartments originated and were behind this plan to raise additional capital.

The Appellees also filed the affidavit of Ruben Schaeffer. He stated that none of the owners ever discussed the issuance and sale of certificates of indebtedness to any persons. He said none of the owners ever authorized Nick Bikos to issue and sell certificates of indebtedness to any person. He also said the conduct of Nick Bikos in selling certificates of indebtedness was without the knowledge of, or authority, consent or direction from the apartment owners.

The reply affidavit of Appellants states that they were told by Nick Bikos at the time of the sale of the certificates that Ruben Schaeffer, Mason & Schaeffer, Inc., and Sagewood Apartments, Ltd., were sponsoring the sale of the certificates of indebtedness, and that they guaranteed them.

■ "An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." 12 Tex.Jur.2d Conspiracy, Sec. 14. A principal is bound by all acts of a general agent whenever the acts are within the ordinary and usual course of the business entrusted to the agent. However, the principal is not bound by the agent's acts if they are done in excess of his authority. 2 Tex.Jur.2d Agency, Sec. 32. This includes both actual and apparent authority.

The Appellants present five points of error contending that fact issues exist as to both the conspiracy theory and the agency theory of the case, and that because of the issue of credibility of both Ruben Schaeffer and Nick Bikos a summary judgment was not proper in this case. The points are all closely related and argued together and will be considered together to determine if a fact issue exists.

■ The affidavit of Ruben Schaeffer and the deposition of Nick Bikos show without doubt that Nick Bikos acted alone in devising the fraudulent scheme and in carrying it out, and that he alone profited from its operation without any knowledge by the apartment house owners of his sinister scheme. The affidavit of Appellants does not show otherwise. We can only conclude that no conspiracy existed. *Quarles v. Traders and General Insurance Co.*, 340 S.W.2d 545 (Tex.Civ.App.—Houston 1960, writ dism'd).

■ On the issue of agency, the affidavit and deposition show that Nick Bikos had no actual authority to issue the certificates of indebtedness. Nevertheless, the issue as to the apparent authority must also be considered. We conclude that one employed to manage an apartment complex, with actual authority to collect and deposit rent, does not have any apparent authority to borrow money from the tenants and issue certificates of indebtedness in the name of the apartment complex. In *Bolin v. Pacific Finance Corporation*, 278 S.W.2d 879 (Tex.Civ.App.—Amarillo 1954, no writ), the Court stated the controlling rules with regard to determining an agent's authority as follows:

"' "When an apparent authority is claimed to arise from representations or conduct, the acts and statements of the principal must be looked to for the requisite foundation and not those of the agent; the former alone can give rise to authority of this character; the latter are never in themselves sufficient for that purpose. The principal must have affirmatively held the agent out as possessing sufficient authority to embrace the particular act in question, or else have voluntarily and in due awareness, actual or constructive, of the agent's assumption of power permitted him to act as if he had the requisite authority. The powers which the agent pretends to have, or assumes to exercise, are inoperative as a

basis for ostensible authority when the principal is not affected by knowledge of them and does not validate them by acquiescence or assent; and no mere combination of circumstances which may, without the principal's participation, mislead third persons, however reasonably, into a false inference of authority affords a sufficient predicate for apparent authority * * * ." 2 C.J.S., Agency, § 96, pages 1214, 1215; *Ford Motor Co. v. Maddox Motor Co.*, Tex.Civ.App., 3 S.W.2d 911, affirmed by Supreme Court 23 S.W.2d 333; *Great American Cas. Co. v. Eichelberger*, Tex.Civ.App., 37 S.W.2d 1050; *Continental Oil Co. v. Baxter,* Tex.Civ. App., 59 S.W.2d 463.' "

Following that quote, the Court went further and said:

"One who deals with an agent of a corporation must exercise proper diligence to ascertain the authority with which the agent has been clothed and cannot rely on the acts and declarations of the agent alone. *Reo Motor Car Co. of Texas v. Barnes*, Tex.Civ.App., 9 S.W.2d 374."

With regard to the specific authority of an agent to borrow money in the name of the principal, the rule is set forth in *Guaranty Bank & Trust Co. v. Beaumont Cadillac Co.*, 218 S.W. 638 (Tex.Civ.App.—Beaumont 1920, writ dism'd), as follows:

" 'Power to borrow money is not to be inferred without clear evidence of such grant. Such authority must be expressly conferred or necessarily implied from the authority ·granted, and will not be inferred from a mere general authority, unless the character of the business or the duties of the agent are of such a nature that he is bound to borrow money * * * in order to carry out his instructions or the duties of his office.' "

It is pointed out in the comment under Restatement of Agency 2d, Sec. 73, that a manager has no power to borrow money in connection with the operation of the business or to issue negotiable instruments in the name of the principal, unless the business conducted is one involving the borrowing of money or the issuing of negotiable instruments such as banking and other financial business. Under the heading of "Authorization to Borrow," Section 74 says:

"Unless otherwise agreed, an agent is not authorized to borrow unless such borrowing is usually incident to the performance of acts which he is authorized to perform for the principal."

The comment under this section notes that the authority to borrow is not inferred unless it is practically indispensable to the continuance of the principal's business or to prevent a very considerable loss to the principal and where it is impossible to communicate with the principal. There is no suggestion in the record in this case that the principals were in the business of borrowing money, nor is' there a suggestion that it was indispensable to the continuance of their business or to prevent a loss that made the borrowing by the manager necessary in this case.

■ In *Mattice v. Equitable Life Assurance Society*, 270 Wis. 504, 71 N.W.2d 262, 55 A.L.R.2d 1206 (1955), and *Lamb v. General Associates, Inc.*, 60 Wash.2d 623, 374 P.2d 677 (1962), the Courts reviewed the rules with regard to the authority of an agent to borrow money in the name of the principal. In each case, the Court concluded that since the principal was not in the business of borrowing money, the agent had neither actual nor apparent authority to borrow in the name of the principal. We reach the same result in this case.

■ The one remaining issue is whether in this summary judgment case there is a fact issue because of questions of credibility. We conclude that there is not. Although Ruben Schaeffer is an interested party, his affidavit is clear, direct and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony. *Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company*, 391 S.W.2d 41 (Tex.1965); *Cochran v. Wool Growers Central Storage Co.*, 140 Tex. 184, 166 S.W.2d 904 (1942). The general rule set forth in those cases was followed in *Voudouris v. Walter E.*

*Heller & Company*, 560 S.W.2d 202 (Tex. Civ.App.—Houston [1st Dist.] 1977, no writ), where the Court held as a matter of law that one alleged to be a general partner had established by his own testimony, which was clear, direct and positive and without circumstances tending to discredit or impeach such testimony, that a general partnership did not exist and that there was no liability on his part for the debts of the partnership.

The deposition of Nick Bikos reflects that he is a longtime gambler, and that he admittedly lied to all of those to whom he sold these certificates. And, in his deposition, he did on one or two occasions take the Fifth Amendment with regard to identifying his signature on checks and certificates of indebtedness. Yet, all of his testimony is clear, direct, and positive, and there are no circumstances in the evidence tending to discredit or impeach such testimony that he acted alone in this fraudulent scheme which he conceived and operated without knowledge upon the part of the apartment owners. If others were involved, surely some proof could have been obtained to at least cast doubt on his testimony, particularly in view of the number of people and the amount of money involved in this particular operation. But there is none. Accepting Appellees' affidavit as true and giving them the benefit of every reasonable inference which properly can be drawn in favor of their position, we conclude that there is no fact issue in dispute. We do so for the same reason given by Justice Pope in *Rolfe v. Swearingen*, 241 S.W.2d 236 (Tex.Civ. App.—San Antonio 1951, writ ref'd n. r. e.), where he said:

> " * * * Appellees' showing was supported by sworn factual statements sufficient upon their face to establish a complete defense to everything appellants alleged. The verity of those sworn statements was in no way challenged by counteraffidavits or other sworn statements. In the hearing to locate the dispute about genuine and material facts, all facts stood undisputed, unchallenged, uncontroverted. When such a condition exists, there are no facts to try. * * *"

The Appellants' points of error are overruled. The judgment of the trial Court is affirmed.