HOLLINGSWORTH, and another, Respondents, v. AMERICAN FINANCE CORPORATION, Appellant.

Supreme Court

*No. 76–023. Submitted on briefs September 7, 1978.—
Decided November 28, 1978.*
(Also reported in 271 N.W.2d 872.)

174

For the appellant the cause was submitted on the brief of *Jerome A. Tepper* and *Tabak & Tepper* of Milwaukee.

For the respondents the cause was submitted on the brief of *James C. McNeely* of Milwaukee.

WILLIAM G. CALLOW, J.   This appeal seeks review of three orders: one granting default judgment against the defendant, American Finance Comporation; the second, vacating a previous order to reopen the same default judgment; and the third, denying the defendant's motion to vacate the judgment. The ultimate question presented is whether the trial court abused its discretion in entering default judgment and denying the motion to vacate the judgment.

This action arose out of a loan transaction. Clarence Hollingsworth and his mother, Florida, filed a summons and complaint seeking relief against American Finance for its alleged violations of the Wisconsin Consumer Act. The complaint was served on an agent of the defendant and filed with the court on January 30, 1976.

On February 20, 1976, the plaintiffs moved for default judgment because the defendant had not answered within twenty days. Sec. (Rule) 802.06(1), Stats. On February 24, 1976, the court held a hearing on the motion. The following was adduced at the hearing: After a bank and a finance company denied Hollingsworth a personal loan, Robert Posey offered to help him get a loan and introduced him to Gerry Potter, manager of the local

office of American Finance Corporation. Hollingsworth testified that, as a condition of getting a $10,000 loan, he was required to give a thousand dollars to Potter. Testifying after Hollingsworth, Posey said that Potter explained to Hollingsworth that he needed some money and was willing to arrange the loan if he could get $1,000 in cash.

On May 24, 1974, Hollingsworth signed a note and received the loan check at Potter's office. The note called for repayment over five years in equal monthly installments, at an annual percentage rate of 18 percent. Florida Hollingsworth also signed the note as a "borrower" and gave American Finance a mortgage on real estate she owned. Hollingsworth testified that to his knowledge his mother was not given any notice of the nature of her obligation as a co-signer. After receiving the check, Hollingsworth cashed it at a bank and gave $1,000 in cash to Posey who delivered it to Potter.

Hollingsworth made several payments which were credited against the balance due on the note. On March 29, 1975, Potter told Hollingsworth that he needed $40 and that he would credit Hollingsworth's account accordingly. Hollingsworth gave him a check for $40, made payable to American Finance. Reading from an American Finance payments record, Hollingsworth testified that he was not given credit for this payment.

During 1975 Hollingsworth, doing business as H & W Tire & Auto Electric Company, repaired cars that had been repossessed by American Finance. Potter told Hollingsworth that American Finance would credit his account for the value of the repairs. On four occasions Hollingsworth billed American Finance, and he was paid by check. Hollingsworth testified that Potter would deliver the check and take it back after Hollingsworth endorsed it. Only one of the four payments was credited to Hollingsworth's account.

American Finance sent Hollingsworth an audit slip in November of 1975. He believed it overstated his balance and called Potter who said it would be straightened out.

One Friday in December, 1975, Hollingsworth called Potter to ask how much it would require to bring his account up to date. Potter suggested that they meet for breakfast the following morning. Hollingsworth gave Potter $500 in cash. Potter told him that he would credit his account and mail him a receipt. The account was not credited. Potter was fired later that month.

The plaintiffs offered in evidence the affidavit of an examiner in the office of the Commissioner of Banking which stated that if each of the payments—the $1,000 initial payment, the $40 payment, the total of $855 from three car repairs, and the $500 payment—were not credited toward Hollingsworth's account and were construed as interest, the annual percentage rate would be 27.43 percent.

At the February 24, 1976, hearing on this evidence, the court found that the uncredited payments constituted interest payments which were excessive under the provisions of the Wisconsin Consumer Act (see: sec. 422.-201, Stats., et seq.), and that pursuant to sec. 425.305, Hollingsworth was entitled to retain the unpaid balance of the loan and to recover the amounts he paid. The court found that as to Florida Hollingsworth the note was void and the mortgage satisfied. It awarded reasonable attorneys' fees, to be determined on the basis of an affidavit of counsel, and directed counsel to draft findings of fact and conclusions of law in accordance with the court's determinations.

The court signed the findings and conclusions April 20, 1976. Judgment was entered April 21; an amended judgment was entered May 14, 1976.

On February 25, 1976, the defendant, by Milwaukee attorney Jerome Tepper, moved to vacate the default judgment on grounds of inadvertence or excusable ne-

glect. Attached to the motion was a proposed answer in which the defendant alleged, among other things, that any unlawful acts Potter may have committed were without the knowledge of the defendant and were outside Potter's authority and scope of employment. A hearing was held on March 15, 1976.

At the hearing Daniel Neilson, assistant manager of the American Finance office on January 30, 1976, testified that he mailed the summons and complaint to the parent corporation's legal staff in Maryland on the first working day following service of the papers. Neilson phoned Attorney Tepper concerning this matter shortly after service though Neilson believed that Chicago counsel would probably handle the case. On February 19, 1976, Neilson again called Tepper to see if he had heard anything more about the case. Tepper told him that he had not been retained.

American Finance closed its Wisconsin offices about February 5, 1976, and sold its accounts receivable to Beneficial Finance. Grover Thomas, a vice president of American Finance, testified he assumed responsibility for closing out operations which had been sold and specifically the Milwaukee offices on February 9, 1976. On that day the district manager, Warren Mackey, told him about this lawsuit and two others. Thomas called the Maryland office and was told it would forward copies of the papers to him. He was instructed to get in touch with Attorney Tepper. Thomas was out of town when the documents arrived. The photocopies were incomplete in that the page showing the date of service was not included. The Maryland legal staff gave him no instructions concerning a time limit. About February 20, 1976, Thomas phoned Attorney Tepper to arrange an appointment which resulted in the February 25 motion by Tepper to vacate the judgment.

At the close of the evidence, the court, without giving reasons, granted the defendant's motion to vacate the

judgment and ordered Hollingsworth to make his monthly payments to the clerk of courts. The court at the May 17, 1976, hearing noted that it had not made a finding of excusable neglect at the time it vacated the judgment. The court signed an order vacating the judgment on March 24, 1976.

On April 1, 1976, the court ordered the defendant to show cause on April 5, 1976, why the March 24 order should not be rescinded on the grounds that (1) there was no showing or finding of excusable neglect; (2) the defendant was insolvent; (3) the plaintiffs could not afford to seek extraordinary relief; and (4) the plaintiffs did not have an opportunity to respond to the motion to vacate. At the hearing counsel for both parties argued the "excusable neglect" standard. At the close of the hearing, the court vacated the order reopening the judgment without setting forth its reasoning. By an order dated May 14, 1976, the court rescinded its order vacating the judgment and reinstated the judgment.

On May 3, 1976, the defendant again moved to vacate the judgment. The motion reasserted the defendant's excusable neglect and also was grounded on newly discovered evidence, and on the plaintiffs' alleged fraud in procuring the judgment. At the May 17, 1976, hearing on the motion, the defendant rested its claim of excusable neglect on the testimony adduced at the March 15 hearing. The defendant offered newly discovered evidence through a former American Finance cashier, and also through a supervisor at plaintiff's bank, that Hollingsworth received two checks for repairing repossessed vehicles which he did not endorse and return to Potter as he testified at the February 24 hearing. Instead, he cashed one and deposited one. Daniel Neilson, the former assistant manager of the American Finance office, testified that he was present when Robert Posey, one of the witnesses for the plaintiff at the February 24 hearing, made an offer to Attorney Tepper to testify for pay on

behalf of the defendant. On cross-examination Neilson recalled at least one occasion when Hollingsworth endorsed a check for repairs and gave it back to Potter. On redirect, Neilson testified that the $500 payment from Hollingsworth to Potter was a personal loan. Neilson repaid Hollingsworth $250 of the $500. Hollingsworth explained that, while initially he would endorse the repair checks and return them to Potter, Potter later insisted on payment in cash because it made bookkeeping easier. He said that, in the cases where he cashed the checks, he gave the cash to Potter. He said that in his February 24 testimony he may have confused "check" and "cash." The defendant argued on this evidence that the judgment was procured by fraud.

From the bench, the court denied the motion to vacate the judgment and signed an order to that effect on May 25, 1976.

The defendant appeals from three orders: (1) the oral order of April 5, 1976, rescinding the order to vacate the default judgment; (2) the May 14, 1976, order granting default judgment; and (3) the oral order of May 17, 1976, denying the motion to vacate the judgment.

We note at the outset that none of the orders to which the notice of appeal is directed is appealable. Oral orders are not appealable. *Dumer v. State,* 64 Wis.2d 590, 610–11, 219 N.W.2d 592 (1974). An order for judgment is likewise not appealable. *Sprangers v. Philippi,* 52 Wis.2d 403, 405, 190 N.W.2d 136 (1971). In this case there is a duly entered judgment and written orders pursuant to the courts' oral pronouncements. This court has subject matter jurisdiction over an appeal from the time of the entry of an appealable order or a judgment. Sec. 817.11(4), Stats. The defective notice of appeal is a matter of personal jurisdiction which was waived here

because Hollingsworth made no objection. *See: Gallagher v. Schernecker,* 60 Wis.2d 143, 146–47, 208 N.W. 2d 437 (1973).

No issues are raised by American Finance on its appeal from the order rescinding the vacation of the judgment which are not raised by the appeals from the order for judgment and the order denying the motion to vacate. The questions thus presented are whether the trial court abused its discretion in granting the default judgment or in denying the motion to vacate the judgment.

■
The entry of default judgment is addressed to the trial court's discretion. *Willing v. Porter,* 266 Wis. 428, 430, 63 N.W.2d 729 (1954). *See also: Production Credit Asso. v. Goede,* 50 Wis.2d 509, 513–14, 184 N.W.2d 830 (1971); *Sibley v. Weinberg,* 116 Wis. 1, 92 N.W. 427 (1902). The defendant's sole argument as to the judgment is that there was insufficient evidence to establish an agency relationship between Potter and American Finance. The defendant maintains that Potter's acts were purely in his own interests and not attributable to the corporation.

■
Where a third party reasonably believes, based on the principal's conduct, that an agent has authority to act in a particular transaction, the principal is bound by the agent's acts within the scope of his apparent authority. *ABC Outdoor Advertising, Inc. v. Dolhun's Marine Inc.,* 38 Wis.2d 457, 461, 157 N.W.2d 680 (1968); *Risdon, Inc. v. Miller Distributing Co.,* 29 Wis.2d 418, 139 N.W.2d 12 (1966); *Voell v. Klein,* 184 Wis. 620, 200 N.W. 364 (1924). This rule applies even though the agent commits a fraud or acts against the principal's interests. *Motor Castings Co. v. Milwaukee County Bank,* 254 Wis. 493, 499, 36 N.W.2d 687 (1949); *Shepard*

v. *Pabst,* 149 Wis. 35, 47, 135 N.W. 158 (1912). *See also:* Restatement (Second) of *Agency* sec. 262, Comment *a* (1958).

American Finance relies on *Franzen v. Hammond,* 136 Wis. 239, 116 N.W. 169 (1908), in which the plaintiffs sued to set aside a mortgage securing a note given to the defendant lender on the ground that the exaction of a commission by the lender's son, acting as her agent, rendered the transaction usurious. The facts set forth in the opinion showed that the defendant's son gave two checks to the plaintiffs drawn on the defendant's account, one for $750, the other for $40. The plaintiffs endorsed the latter and gave it back to the son. The defendant herself had no knowledge of the transaction except for having seen the note or mortgage. The opinion discloses nothing further regarding the circumstances of the transaction. In affirming the defendant's judgment, the court stated the rule as follows:

> "It is the opinion of the court . . . that the exaction by the agent of a lender, without his knowledge or participation, of the borrower of a sum as commission for doing the business, such exaction being a private matter between the agent and the borrower, does not make the loan contract as to the lender usurious; that it is not within the apparent scope of such an agency to violate the law, and that the receipt by the lender of the security, regular upon its face, and assertion of a right to enforce it according to its tenor, does not constitute ratification of any act of the agent in violation of law. The result is that the judgment must be affirmed." 136 Wis. at 245–46.

We acknowledge that the *Franzen* opinion may be read broadly to stand for the proposition that the scope of an apparent agency may never embrace the making of a usurious loan. Language to this effect is clearly er-

roneous and is hereby overruled. Whether the principal is bound by the agent's acts requires a case-by-case inquiry into whether the principal's conduct reasonably induced a third party to believe that the agent had authority to act for the principal. Where the parties understand that the commission is, in the words of the court in *Franzen,* "a private matter between the agent and the borrower," the principal is not charged with the transaction. We believe this to be the proper reading of *Franzen.*

Though the trial court made no specific finding that Potter's acts were of such a character as to bind the defendant corporation, that determination is implicit in the court's findings and conclusions placing liability on American Finance for Potter's acts. We recently restated the standard of review of trial court findings where the evidence is in conflict:

"When such a situation is presented, the test on appeal is whether a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached the same conclusions, *In re Estate of Evans,* 83 Wis.2d 259, 271, 265 N.W.2d 529 (1978). Such findings will not be upset on appeal unless they are against the great weight and clear preponderance of the evidence. *In re Estate of Taylor,* 81 Wis.2d 687, 696, 697, 260 N.W.2d 803 (1978)."

*In re Estate of Glass,* 85 Wis.2d 126, 134, 270 N.W.2d 386 (1978). It cannot be said that the trial court's implicit finding that American Finance was bound by Potter's acts is against the great weight and clear preponderance of the evidence. Hollingsworth testified that he went to Potter, the manager of a finance company, because he needed a loan. The loan transaction took place in Potter's office. Hollingsworth made the $40 check payable to American Finance; he billed his work

on the cars to American Finance; he was paid by checks drawn on the American Finance account; and he demanded a receipt for the $500 cash payment to Potter. While there was evidence suggesting that Hollingsworth ought to have known that Potter was acting of his own accord, it was reasonable on the evidence as a whole to find that American Finance was bound by Potter's acts. Thus we conclude that the court did not abuse its discretion in entering judgment for the plaintiffs.

The next question is whether the court abused its discretion in denying the motion to vacate the judgment. The trial court has wide discretion in ruling on a motion to vacate a judgment. Its order will only be upset on appeal if there is clear abuse. *Hansher v. Kaishian,* 79 Wis.2d 374, 389, 255 N.W.2d 564 (1977). In *Dugenske v. Dugenske,* 80 Wis.2d 64, 68, 257 N.W.2d 865 (1977), the court set forth three principles guiding the exercise of the trial court's discretion: (1) The statute relating to vacating default judgments is remedial and should be liberally construed; (2) the law favors affording litigants their day in court; and (3) default judgments are particularly disfavored. The court also noted countervailing factors of public policy which favor finality of judgments and discourage litigation delay and negligence of counsel. *Id.* at 70.

The defendant's motion asserts three grounds for vacating the judgment: (1) mistake, inadvertence, or excusable neglect; (2) newly discovered evidence; and (3) fraud in procuring the judgment.

Relief on the first asserted ground requires a showing of two distinct elements: (1) that the judgment was the product of mistake, inadvertence, or excusable neglect; and (2) that there is a meritorious defense. If there is no showing of the first, the court need not reach the

second. *Id.* at 71–72. The first question is whether the movant's conduct was excusable under the circumstances. *Hansher v. Kaishian, supra* at 391. Excusable neglect is "that neglect which might have been the act of a reasonably prudent person under the same circumstances." *Wagner v. Springaire Corp.*, 50 Wis.2d 212, 217, 184 N.W.2d 88 (1971). In *Dugenske, supra* at 70, the claimed excusable neglect consisted of counsel mislaying his files in the course of moving his law offices. Twenty-five days after the expiration of the time to answer, the defendant retained another lawyer to defend the action. The court held, on the principles set forth above, that the trial court did not abuse its discretion in denying the motion to vacate the judgment.

We conclude that there is nothing in the instant case manifesting an abuse of judicial authority in refusing to vacate the judgment. A review of federal cases discloses that the courts have been reluctant to set aside an entry of default or a default judgment, *see:* Fed. R. Civ. P. 55 (c), 60(b), where the claimed excusable neglect consists of confusion in forwarding papers from one office to another or in reorganizing a business. *Rasmussen v. W. E. Hutton & Co.*, 68 F.R.D. 231, 235 (N.D. Ga. 1975); *Robinson v. Bantam Books, Inc.*, 49 F.R.D. 139, 141–42 (S.D.N.Y. 1970); *Nelson v. Coleman Company*, 41 F.R.D. 7 (D.S.C. 1966).

The defendant argues it took prompt action to vacate the judgment. As we said in *Hansher v. Kaishian, supra* at 392: "Promptness of action to seek relief is a material factor bearing on whether relief should be granted. . . . However, promptness does not of itself require an affirmative result; the matter remains in the trial court's discretion, to be exercised upon the totality of the circumstances." Because we conclude that there was no showing of excusable neglect, we need not reach the

merits of the defendant's proposed answer. We hold that the trial court did not abuse its discretion in determining there was no excusable neglect warranting the vacation of the order for judgment.

The defendant urged the trial court, pursuant to sec. 806.07 (1) (b),[1] Stats., to grant relief from the judgment because there is newly discovered evidence entitling the defendant to a new trial under sec. 805.15 (3),[2] and because the judgment was procured by fraud. These arguments rest primarily on the testimony dealing with Hollingsworth's handling of the car repair checks from American Finance and on Neilson's statement that Posey offered to testify for pay. To warrant relief from a judgment, newly discovered evidence must meet certain criteria, one being that the evidence would probably change the result. There is no showing that this is the case here.

[1] "806.07 **Relief from judgment or order.** (1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

"(a) Mistake, inadvertence, surprise, or excusable neglect;

"(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);

"(c) Fraud, misrepresentation, or other misconduct of an adverse party;

". . .

"(h) Any other reasons justifying relief from the operation of the judgment.

"(2) The motion shall be made within a reasonable time, . . ."

[2] "805.15 **New trials.**

". . .

"(3) NEWLY-DISCOVERED EVIDENCE. A new trial shall be ordered on the grounds of newly-discovered evidence if the court finds that:

"(a) The evidence has come to the moving party's notice after trial; and

"(b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and

"(c) The evidence is material and not cumulative; and

"(d) The new evidence would probably change the result."

While this evidence is probative, there is no showing that it is of such weight that the result would probably change. Hollingsworth offered a reasonable explanation of his confusion about his earlier testimony regarding the checks for the car repairs. Nor does the evidence pointed to by the defendant demonstrate that Hollingsworth procured the judgment by fraud or misrepresentation. The evidence may be impeaching and contradictory, but it does not amount to a showing of fraud. We do not find that the trial court abused its discretion in denying the relief sought by the defendant.

*By the Court.*—Orders and judgment affirmed.