FIRST WISCONSIN NATIONAL BANK, as Assignee of Russ Darrow of Madison, Inc., a Wisconsin corporation, Plaintiff-Respondent and Cross-Appellant,

v.

Basil and Catherine NICOLAOU, Defendants-Appellants and Cross-Respondents.

Supreme Court

*No. 82-003. Argued April 25, 1983.—Decided July 1, 1983.*

(Also reported in 335 N.W.2d 390.)

526

For the appellants and cross-respondents there were briefs by *Ronald R. Ragatz, John H. Lederer* and *De Witt, Sundby, Huggett & Schumacher, S.C.,* Madison, and oral argument by *Mr. Lederer.*

For the respondent and cross-appellant there was a brief by *James R. Cole, Steven J. Kirschner* and *Ross & Stevens, S.C.,* Madison, and oral argument by *Mr. Cole.*

WILLIAM G. CALLOW, J. This is an appeal and cross-appeal from a judgment of the Dane county circuit court, Reserve Judge William C. Sachtjen, which awarded appellants damages and attorney fees under the Wisconsin Consumer Act (WCA).[1] This appeal was certified by the court of appeals and accepted by this court pursuant to sec. (Rule) 809.61, Stats.

On May 29, 1976, Basil and Catherine Nicolaou purchased a van from a dealer in Madison, Wisconsin. They financed the purchase through the dealer, executing an installment sale contract and security agreement. The

---

[1] Chapters 421 to 427, Stats., constitute the Wisconsin Consumer Act.

dealer later assigned its rights under the contract to First Wisconsin National Bank (Bank).

Shortly after purchasing the van, the Nicolaous moved to Alaska. When their employment arrangements did not work out, they left Alaska for California. The Nicolaous violated the contract by making both moves without the knowledge or consent of the Bank. In addition, they fell behind in their payments. The Bank unsuccessfully attempted to contact the Nicolaous regarding their default on October 22, 1976. On November 12, 1976, the Bank sent them a notice of right to cure default but received no reply. The Bank located the Nicolaous in California on January 3, 1977, and ordered a collection agency to repossess the van as soon as possible. On January 4, 1977, the collection agency repossessed the van without legal process or the Nicolaous' consent.

The van was returned to Wisconsin and sold. The Bank then commenced an action for a deficiency judgment. The Nicolaous counterclaimed that the self-help repossession order by the Bank violated the WCA—specifically, sec. 425.206, Stats., 1975,[2] (hereinafter all

---

[2] Sec. 425.206, Stats., 1975, provides:

"**Nonjudicial enforcement limited.** (1) Notwithstanding any other provision of law, no merchant may take possession of collateral or goods subject to a consumer lease in this state by means other than legal process in accordance with this subchapter except when:

(a) The customer has surrendered the collateral or leased goods;

(b) Judgment for the merchant has been entered in a proceeding for recovery of collateral or leased goods under s. 425.205, or for possession of the collateral or leased goods under s. 425.203(2); or

(c) The merchant has taken possession of collateral or leased goods pursuant to s. 425.207(2).

(2) In taking possession of collateral or leased goods, no merchant may a) commit a breach of the peace, or b) enter a dwelling used by the customer as a residence except at the voluntary request of a customer.

(3) A violation of this section is subject to s. 425.305."

references in this opinion are to the 1975 statutes unless otherwise indicated) and therefore, they were entitled to relief in accordance with sec. 425.305.[3] The Nicolaous alleged that, by the terms of the contract, Wisconsin law governed its enforcement. Both sides moved for summary judgment. The trial court granted the Bank's motion and denied the Nicolaous' motion, ruling that California law applied. Judgment was entered on December 2, 1977, for the Bank in the amount of $2,500, plus costs and disbursements. The Nicolaous appealed. The court of appeals reversed the judgment and remanded the matter for further proceedings. *First Wisconsin National Bank of Madison v. Nicolaou,* 85 Wis. 2d 393, 270 N.W.2d 582 (Ct. App. 1978). The appellate court held that Wisconsin law applied to the repossession because the contract expressly provided that its validity, construction, and enforcement were to be "governed by the internal laws of Wisconsin."[4] The conflict of law provisions of sec. 421.201(5), do not constitute internal law and, therefore, were not adopted by the contract. *Id.* at 398. The court concluded that under Wisconsin law the Bank was required to resort to legal process to repossess the van in California. *Id.* at 400. Its failure to do so was a violation of the WCA. The bank filed a petition seeking review of the court of appeals' decision. This court dismissed the petition

---

[3] Sec. 425.305, Stats., 1975, provides:

"**Transactions which are void.** (1) In a transaction to which this section applies, the customer shall be entitled to retain the goods, services or money received pursuant to the transaction without obligation to pay any amount.

(2) In addition, the customer shall be entitled to recover any sums paid to the merchant pursuant to the transaction."

[4] In addition to stating that Wisconsin law shall apply to its enforcement, the contract also provided:

"(9) Repossession. Debtor has a right to a court hearing on the issue of default before any repossession of any Collateral, but by surrendering the Collateral Debtor waives such right."

for review, holding it was not timely filed. *First Wisconsin National Bank of Madison v. Nicholaous* [sic, Nicolaou], 87 Wis. 2d 360, 274 N.W.2d 704 (1979). The matter was remanded to the trial court.

On April 16, 1979, the Nicolaous moved for relief on remand. Pursuant to a stipulation of the parties, the trial court vacated the December 2, 1977, judgment. Still at issue, however, was the amount of damages the Nicolaous were entitled to recover for the Bank's violation of the WCA. The Bank moved for leave to amend its reply to the Nicolaous' counterclaims. It sought to add the defense that its violation of the WCA was unintentional, resulting from a bona fide error within sec. 425.301(3), Stats.[5] The trial court denied the motion, ruling that there was no need to amend the pleadings to raise the bona fide error defense because it had already been raised by the Nicolaous.[6]

On December 22, 1980, the trial court filed a memorandum decision, holding that the Bank's violation of the WCA was unintentional resulting from a bona fide error. Thus the Bank's liability was limited to the extent provided by sec. 425.301(3), Stats. The Nicolaous were entitled to recover only the payments they had made on the contract ($1,393.08) pursuant to sec. 425.305(2), plus reasonable costs and attorney fees. On March 25, 1981, the Nicolaous petitioned for an award of attorney

---

[5] Sec. 425.301(3), Stats., 1975, provides:

"Notwithstanding any other section of this act, a customer shall not be entitled to recover specific penalties provided in s. 425.302 (1)(a), 425.303(1), 425.304(1) or 425.305(1) if the person violating this act shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

[6] The Bank also sought to add a defense based on sec. 426.104 (4)(a), Stats. The trial court's decision to deny this proposed amendment to the Bank's reply is not an issue on this appeal.

fees pursuant to sec. 425.308.[7] They requested $20,462.-66, plus a 1.5 multiplier, for a total of $30,693.99. The trial court awarded the Nicolaous $8,500 in attorney fees, reducing the amount requested on three grounds. First, a multiplier is not sanctioned by Wisconsin law and, therefore, cannot be used to calculate attorney fees. Second, the Nicolaous cannot recover the attorney fees expended on the bona fide error defense because they did not prevail on that issue. Based on this ruling, the court reduced the potentially recoverable fees to $13,-910.81. Finally, the court further reduced the award to $8,500 on the ground that attorney fees should bear some relation to the amount of damages recovered.

On November 25, 1981, the trial court entered a judgment awarding the Nicolaous damages totaling $9,893.08 ($1,393.08 in principal damages plus $85,00 for attorney fees, costs, and disbursements). The judgment also dis-

---

[7] Sec. 425.308, Stats., 1975, provides:

"**Reasonable attorney's fees.** (1) If the customer prevails in an action arising from a consumer transaction, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney's fee.

(2) The award of attorney's fees shall be in an amount sufficient to compensate attorneys representing customers in actions arising from consumer transactions. In determining the amount of the fee, the court may consider:

(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

(b) The customary charges of the bar for similar services;

(c) The amount involved in the controversy and the benefits resulting to the client or clients from the services;

(d) The contingency or the certainty of the compensation;

(e) The character of the employment, whether casual or for an established and constant client; and

(f) The amount of the costs and expenses reasonably advanced by the attorney in the prosecution or defense of the action."

missed the Bank's complaint with prejudice and denied the Nicolaous recovery for the value of the van under sec. 425.305 (1), Stats., and the attorney fees expended in litigating the bona fide error defense. The Nicolaous appealed and the Bank cross-appealed from parts of the judgment.

There are two issues presented on this appeal: (1) Whether a violation of the Wisconsin Consumer Act caused by a mistake of law may fall within the bona fide error defense under sec. 425.301 (3), Stats.; and (2) whether the trial court's award of attorney fees was "sufficient to compensate" the customers' attorneys within sec. 425.308.

## I. BONA FIDE ERROR

The WCA establishes several remedies for its violation which are to be liberally administered.[8] It does not, however, go so far as to mandate strict liability. Sec. 425.301 (3), Stats., creates an exception to certain penalties of the WCA. This exception applies if the violator shows by a preponderance of the evidence that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

This court has not previously construed sec. 425.301 (3), Stats., to determine what constitutes a bona fide error. There is, however, some guiding authority. A

---

[8] Sec. 425.301(1), Stats., 1975, provides:

"**Remedies to be liberally administered.** (1) The remedies provided by this subchapter shall be liberally administered to the end that the customer as the aggrieved party shall be put in at least as good a position as if the creditor had fully complied with this act. Recoveries under this act shall not in themselves preclude the award of punitive damages in appropriate cases."

provision of the Federal Truth in Lending Act (TILA) also creates a bona fide error defense. At the time this action arose, 15 U.S.C. sec. 1640(c) (1976) provided:

"A creditor may not be held liable in any action brought under this section for a violation of this subchapter if the creditor *shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error*." (Emphasis added.)

The federal case law interpreting this provision must be accorded considerable weight in construing sec. 425.- 301(3). The language of 15 U.S.C. sec. 1640(c) is identical in pertinent part to sec. 425.301(3). Thus the federal cases are persuasive authority. *Wisconsin Environmental Decade v. Public Service Commission,* 79 Wis. 2d 161, 174, 255 N.W.2d 917 (1977) ; *In re Estate of Kersten,* 71 Wis. 2d 757, 763, 239 N.W.2d 86 (1976). Moreover, one of the purposes and policies of the WCA is "[t]o coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act." Sec. 421.102(2)(d). The TILA is part of the consumer credit protection act. Therefore, sec. 425.301(3) should be harmonized with related provisions of the TILA, particularly 15 U.S.C. sec. 1640(c).

The vast majority of federal courts have held that the bona fide error defense applies only to violations caused by unintentional acts such as inadvertent clerical errors. Errors of law, even if made in good faith, do not qualify for the defense.[9] *Ratner v. Chemical Bank New York*

---

[9] This holding has been codified in 15 U.S.C. sec. 1640(c) (Supp. V 1981) which has been amended to read:

"A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a pre-

*Trust Company,* 329 F. Supp. 270, 281–82 (S.D. N.Y. 1971) ; *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1167 (7th Cir 1974) ; *Palmer v. Wilson,* 502 F.2d 860, 861 (9th Cir. 1974) ; *Thomka v. A. Z. Chevrolet, Inc.,* 619 F.2d 246, 250–51 (3d Cir. 1980) ; *McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir. 1978) ; *Ives v. W.T. Grant Company,* 522 F.2d 749, 758 (2nd Cir. 1975).[10] We agree with the foregoing authorities and adopt their holding as the proper construction of sec. 425.301(3), Stats. The fact that the bona fide error defense under the WCA covers a broader range of violations than the federal provision does not, as the Bank suggests, require that it be given a broader interpretation. The policies behind the WCA support the application of the federal precedent to sec. 425.301(3).

The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objects.[11] Penaliz-

ponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, *except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.*" (Emphasis added.)

[10] For further citations, *see* 27 Annot., 27 A.L.R. Fed 602 (1976).

[11] Sec. 421.102, Stats., 1975, provides:

"421.102 **Purposes; rules of construction.** (1) This act shall be liberally construed and applied to promote its underlying purposes and policies.

(2) The underlying purposes and policies of this act are:

(a) To simplify, clarify and modernize the law governing consumer transactions;

(b) To protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants;

(c) To permit and encourage the development of fair and economically sound consumer practices in consumer transactions; and

(d) To coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act.

ing violations resulting from clerical errors[12] would do little to achieve this purpose. A certain number of clerical errors are inevitable notwithstanding the maintenance of procedures reasonably adopted to avoid them. Thus violations resulting from such errors will not be prevented by the threat of liability. *LaPetina v. Metro Ford Truck Sales, Inc.*, 648 F.2d 283, 287 (5th Cir. 1981).

Excusing a violation caused by an error of law would, however, hinder compliance with the WCA. Errors of law can be prevented, and ordinarily, creditors are in the better position to do so. Their frequent involvement in transactions governed by the WCA gives them an expertise not shared by the average consumer. Further, creditors generally have the resources to obtain legal advice; whereas the cost of legal assistance is often a financial hardship for the consumer. Relatively speaking, the cost of legal assistance may be less for creditors than consumers. Creditors engage in many similar transactions to which the same legal advice may apply. Consumers, on the other hand, only occasionally transact under the WCA. Usually they must obtain legal assistance for each individual transaction. Thus the creditor should bear the responsibility to avoid mistakes of law and resulting WCA violations. Extending the bona fide error defense to errors of law would lessen the incentive for creditors to take precautions which help ensure compliance with the WCA.

Furthermore, applying the bona fide error defense to violations resulting from errors of law would weaken enforcement of the WCA by consumers. To fully recover, a consumer would have to prove that the creditor know-

(3) A reference to a provision of this act includes reference to a related rule or order of the administrator adopted pursuant to this act."

[12] Examples of clerical errors are mistakes in calculations, filing, printing, computer programming, and equipment malfunctions.

ingly and intentionally violated the WCA. The proof problems associated with such a requirement would frustrate consumer claims. As stated by one court: "If consumers would be required to prove that creditors were determined to violate the Act in order to prevail, the civil remedy would be a hollow one." *Buford v. American Finance Company,* 333 F. Supp. 1243, 1248 (1971). Private enforcement of consumer protection legislation, such as the WCA, should be facilitated to accomplish the broad remedial purposes intended by the legislature. *Dept. of Transportation v. Transportation Comm.,* 111 Wis. 2d 80, 93, 330 N.W.2d 159 (1983).

Finally, there is no need to bring errors of law within the bona fide error defense. The WCA establishes a mechanism through which creditors can protect themselves from liability resulting from good faith errors of law. Sec. 426.104(4)(b), Stats.,[13] allows a creditor to submit in writing to the administrator (Commissioner of Banking) any act, practice, or procedure for a determination of legality. If the administrator gives written approval or fails to disapprove within thirty days, the act, practice, or procedure submitted shall not be deemed a violation of the WCA. Not only is the bona fide error defense unnecessary as to errors of law, its application will impede the benefits of sec. 426.104(4)(b). Use of this statutory mechanism by creditors is highly desirable because it can prevent legal errors and accompanying

---

[13] Sec. 426.104(4)(b), Stats., 1975, provides:

"(b) Any act, practice or procedure which has been submitted to the administrator in writing and either approved in writing by the administrator or not disapproved by the administrator within 30 days after its submission to him shall not be deemed to be a violation of this act or any other statute to which this act refers notwithstanding that such approval of the administrator or nondisapproval by the administrator may be subsequently amended or rescinded to be determined by judicial or other authority to be invalid for any reason."

WCA violations. If the bona fide error defense is also available, however, there will be less incentive for creditors to wait thirty days for the administrator's determination.

In the instant case, the Bank violated the WCA by ordering the Nicolaous' van repossessed without legal process. The Bank mistakenly believed that, since the van was in California, California law rather than the WCA governed the repossession. Thus the violation resulted from an error of law. Having determined that an error of law is not a bona fide error, we conclude that the bona fide error defense is not available to the Bank. Accordingly, the trial court erred in limiting the Bank's liability within sec. 425.301(3), Stats. The Nicolaous are entitled to recover both the value of the van and the payments made on the sales contract under sec. 425.305.

## II. ATTORNEY FEES

Sec. 425.308, Stats., provides that a customer who prevails in an action arising out of a consumer transaction shall recover a reasonable amount for attorney fees. The use of the word "shall' indicates attorney fee awards for prevailing consumers are mandatory. *In Matter of E.B.,* 111 Wis. 2d 175, 185, 330 N.W.2d 584 (1983). Since we have determined that the Nicolaous prevail on the bona fide error defense, they are entitled as a matter of law to recover reasonable attorney fees expended in litigating the issue.[14] The trial court's decision to deny recovery of such fees must be reversed. Still at issue is the amount of the attorney fees awarded by the

---

[14] The Nicolaous prevail on all issues. Therefore, we need not reach the question of whether a party who prevails on only some issues may nevertheless recover attorney fees for all issues litigated.

court. After subtracting the attorney fees allocated to the bona fide error defense, the trial court further reduced the award to $8,500. In reaching this figure, the court indicated that it considered all of the factors enumerated in sec. 425.308(2). The court specifically discussed only one factor, however, stating that "an award for attorney fees should bear some relation to the amount of money involved in the litigation and the recovery obtained." The Nicolaous contend that the trial court's decision to limit the award to $8,500 was erroneous. We agree.

Although an attorney fee award is mandatory, sec. 425.308, Stats., leaves the amount to the trial court's discretion. We have recognized that the trial court has the expertise and the opportunity to fully consider the matter of attorney fees. *Tesch v. Tesch,* 63 Wis. 2d 320, 334–35, 217 N.W.2d 647 (1974). For this reason, its findings and award may be given some weight on review. However, this court need not defer to the trial court's determination. *State v. Sidney,* 66 Wis. 2d 602, 607, 225 N.W.2d 438 (1975). As part of its inherent supervisory power over the practice of law, this court may independently review the reasonableness of an attorney fee award. *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis. 2d 179, 184, 214 N.W.2d 401 (1974); *Theuerkauf v. Schnellbaecher,* 64 Wis. 2d 79, 93, 218 N.W.2d 295 (1974). *See also Will of Gudde,* 260 Wis. 79, 86, 49 N.W.2d 906 (1951); *Touchett v. E Z Paintr Corp.,* 14 Wis. 2d 479, 488, 111 N.W.2d 419 (1961).

The WCA offers guidance for determining the amount of reasonable attorney fees. Sec. 425.308(2), Stats., provides that the award of attorney fees shall be in an amount sufficient to compenstate attorneys representing consumers. The statute goes on to list six factors the court may consider in determining the amount of the award. Those factors are as follows:

"(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

"(b) The customary charges of the bar for similar services;

"(c) The amount involved in the controversy and the benefits resulting to the client or clients from the services;

"(d) The contingency or the certainty of the compensation;

"(e) The character of the employment, whether casual or for an established and constant client; and

"(f) The amount of the costs and expenses reasonably advanced by the attorney in the prosecution or defense of the action."[15]

The Nicolaous' attorneys attached an exhibit to the petition for attorney fees which documented the time spent on each aspect of the case and the rate charged. Up to that point the grand total claimed for services rendered was $20,462.66. At oral argument the Bank conceded the accuracy of the Nicolaous' attorney fee records, stating that it did not challenge either the number of hours or the rate. Nevertheless, the Bank argues that attorney fees should be limited to the amount of the recovery. This contention is without merit. The primary consideration in establishing the amount of attorney fees is that the award must be sufficient to compensate the attorneys.

To a large extent the WCA depends upon private lawsuits for its enforcement. Ordinarily, however, the amount of damages flowing from a WCA violation is in-

---

[15] The statute does not require the trial court to specifically consider each of these factors in every case. We have stated, however, that the trial court should fully consider the matter of attorney fees. *State v. Sidney*, 66 Wis. 2d 602, 608, 225 N.W.2d 438 (1975). It is advisable for the trial court to expressly examine all relevant factors in its written decision.

sufficient to make it economical for a consumer to initiate legal action. Indeed, the cost of legal representation will often exceed the recovery in a WCA case. However, WCA actions frequently present important legal questions for both the consumer and the creditor which bear on the public policy of consumer protection. The potential impact of these cases over the long run induces creditors to litigate them to the fullest. The result being that, in the absence of sufficient attorney fee awards, consumers will be financially unable to maintain meritorious claims. By the same token, the prospect of only a meager fee for a great deal of work will make WCA actions unattractive to attorneys. In short, the policies of the WCA will not be effectively carried out through private enforcement unless adequate attorney fees are awarded to prevailing consumers.

We conclude that the amount billed by the Nicolaous' attorneys is reasonable compensation for the services rendered.[16] An examination of the record, in light of the factors set forth in sec. 425.308, Stats., supports this conclusion.

A great deal of time and labor was required to litigate this matter. The Nicolaous' attorney fee records reveal that their attorneys alone spent approximately 350 hours on this lawsuit. It is reasonable to assume that the Bank's attorneys put in at least as much time. The time expended is justified by the labyrinth of motions, appeals, and petitions in this case. Both parties took nearly every procedural avenue available. Since this action began in June of 1977 there have been two appeals—one to the court of appeals and one to this court—a petition

---

[16] Although the Nicolaous requested a 1.5 multiplier before the trial court, the issue was not briefed on this appeal. Accordingly, the fee award shall not exceed the amount actually billed.

for review to this court, and numerous motions and hearings.

The issues presented throughout the course of this litigation were novel and sufficiently difficult to require a high-level skill on the part of the attorneys involved. The questions regarding the applicability of the WCA to out-of-state repossessions and the bona fide error defense were issues of first impression in this state. In addition, this court has not previously considered the attorney fee provision of the WCA. All three issues are complex in terms of legal analysis and policy concerns.

The rate charged by the Nicolaous' attorneys ($30 to $70 per hour, depending upon the attorney) is in line with the customary charges of the bar for similar services. Over eight years ago this court recognized that the prevailing average rate charged by attorneys in this state was $45 per hour. *State v. Sidney*, 66 Wis. 2d at 609. Recognizing that costs have increased substantially since that time, we conclude that the rate charged for the services rendered in this case was reasonable. As noted earlier, the Bank does not challenge the rate.

Although the attorneys documented the hours worked and the rate charged, the Nicolaous were not periodically billed for these services. They paid the attorneys a $200 retainer and agreed to reimburse the attorneys for costs or expenses contingent upon winning the case. Compensation was far from certain. The attorneys have risked a great deal of money in pursuing the action to this point. Not including the cost of this appeal, the attorneys have invested over $20,000 in fees and expenses. The risks taken by the attorneys should be rewarded with adequate compensation.

Further, the Nicolaous have a significant interest in this controversy. As a result of this appeal, their recovery totals $5,193.08 ($1,393.08 for the payments made under the contract, plus $3,800 for the value of the van)

—a sizable benefit for most consumers. The fact that the fees claimed exceed the recovery does not alone indicate that the fees are unreasonable. As previously noted, the recovery obtained in a WCA case is often far exceeded by the legal costs. The trial court gave too much weight to the amount recovered in reducing the fee award to $8,500. This factor must be liberally construed and applied in accordance with the other relevant factors. The fees claimed by the Nicolaous' attorneys are justified by the time and skill required to litigate this matter, the novelty of the issues, and the risks taken in pursuing the case. Therefore, the disparity between the recovery and the attorney fees did not warrant a reduction in the award.

The Bank argues on cross-appeal that the Nicolaous are not entitled to any attorney fees because they came into this action with "unclean hands" (i.e., they defaulted on the sales contract). This contention is wholly without merit. The WCA was designed in large part to protect defaulting consumers. Indeed, the provision prohibiting self-help repossession which was violated by the Bank in this case could only apply to a defaulting consumer.

We conclude, based on an independent review of the record, that the fees claimed by the Nicolaous' attorneys are reasonable. Accordingly, the trial court's attorney fee award is reversed. The Nicolaous are entitled to recover attorney fees of $20,462.66, plus reasonable fees expended in bringing this appeal.[17]

The Bank also cross-appealed from the dismissal of its complaint on the merits. This issue was neither

---

[17] Because we hold, based on the record, that the Nicolaous are entitled to recover the total attorney fees billed, plus reasonable fees for this appeal, we need not reach the question of whether they can discover the amount of fees expended by the Bank in this case.

briefed nor argued on appeal. Therefore, we summarily affirm the trial court's decision on this issue.

*By the Court.*—The judgment of the trial court is affirmed in part, reversed in part, and cause remanded for a determination as to the reasonable attorney fees expended on this appeal.

STEINMETZ, J. (*concurring*). I disagree with the majority's assertion that the federal case law interpreting the Truth-In-Lending Act is persuasive authority for the issue in this case. The legislative history of the Wisconsin Consumer Act indicates that the narrow federal definition of "bona fide error" should not apply in Wisconsin. When the Consumer Act was first introduced, it contained no bona fide error section at all. A revised version contained a bona fide error provision, but it was only to apply to limited, specific violations of the act. As finally adopted, the bona fide error exemption was extended to virtually every violation of the act, including violations of sec. 425.206, Stats., regarding nonjudicial enforcement.

In the Truth-In-Lending Act, Congress was concerned only with the narrow subject of disclosure. It was only in that limited context that the bona fide error exemption arose. Unlike the Truth-In-Lending Act, the Wisconsin Consumer Act covers the entire subject of creditor/consumer relations. Since the Consumer Act contemplates a wider range of violations than the Truth-In-Lending Act, a broader interpretation of bona fide error is warranted. Indeed, it is difficult, if not impossible, to envision a clerical error in the context of the repossession of a vehicle. I would hold as did the trial court: "We do not believe it was the intent of the legislature to limit the bona fide error defense to simple clerical errors in disclosures."

There are two elements to a creditor's bona fide error defense: (1) the violation must not have been intentional,

and (2) the violation must have resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error. The trial court held that First Wisconsin's violation of the Consumer Act was unintentional and I agree.

As to the second requirement of the defense, the record displays that First Wisconsin consulted the foremost banking and consumer law experts in the state to ascertain and comply with the requirements of the Consumer Act and its provisions. This consultation appears to have been in the form of attendance at seminars and banker association conferences where the act was explained. It does not appear that direct legal advice as to the repossession procedures applicable to the contract involved was obtained.

The form contract used in the sale of this vehicle contained language indicating the "validity, construction and enforcement" of the contract would be governed by "the internal laws of Wisconsin." Also, the contract stated that the debtor had a right to a court hearing on the issue of default before any repossession of collateral could take place. The bank, based on its consultations, understood that the law of the state in which the collateral was located would apply to a repossession in that state. This position is not consistent with the second part of the bona fide error defense. In light of the contract's express language, it cannot be stated that the bank's error was a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error. The very contract at issue stated that the law of Wisconsin would govern and that the debtor was entitled to a court hearing on the issue of default before repossession of the collateral could take place. A mere reading of the contract and applying its clear language would have prevented this error from occurring. The bank's procedure was not reasonably adapted to avoid error.