Glen CLARK and Bonnie C. Clark, Plaintiffs-Respondents and Cross-Appellants,

v.

AETNA FINANCE CORPORATION, d/b/a Thorp Finance Corporation, Defendant-Appellant and Cross-Respondent.

Court of Appeals

No. 82–1176. Argued July 27, 1983.—Decided October 20, 1983.
(Also reported in 340 N.W.2d 747.)

582

For the defendant-appellant and cross-respondent there were briefs by *Edward J. Heiser, Jr.* and *Catherine L. Shaw* and *Whyte & Hirschboeck, S.C.* of Milwaukee, and oral argument by *Peter J. Stone* of Milwaukee.

For the plaintiffs-respondents and cross-appellants there were briefs by *Terence S. Hawkins* and *Fox Law Offices* of Madison and oral argument by *Terence S. Hawkins*.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J.   Aetna Finance Corporation, d/b/a Thorp Finance Corporation, appeals from a judgment which concluded Thorp had charged a usurious interest rate and awarded the plaintiffs, Bonnie and Glen Clark, $13,469.30 damages. The Clarks cross-appeal from that portion of the judgment which awarded them a $4,490 contribution to their attorney fees. We affirm the damages award, reverse the attorney fees award and remand for an award of reasonable attorney fees expended by the Clarks in the trial court and on this appeal.

On November 23, 1977, the Clarks borrowed $12,155 from Thorp. Thorp charged them interest on the note at an annual rate of 18%, the maximum legal rate under secs. 138.09 (7) (b) 2 and 422.201 (3), Stats. (1977).[1] As a prerequisite of the loan, Thorp required the Clarks to pay judgments of $961.05 which constituted liens against their real estate. The $961.05 was to be paid from the

---

[1] Section 138.09 (7) (b) 2, Stats. (1977), provides:

(b) A licensee may charge, contract for or receive a rate of interest which shall not exceed the following:

. . . .

2. With respect to any loan, including a loan exceeding $3,000, at a rate not to exceed 18% per year computed on the declining unpaid principal balances of the loan from time to time outstanding, calculated according to the actuarial method, but this does not limit or restrict the manner of contracting for the interest, whether by way of add-on, discount or otherwise, so long as the rate of interest does not exceed that permitted by this paragraph.

Section 422.201 (3), Stats. (1977), provides: "For licensees under s. 138.09 and under s. 218.01, the finance charge, calculated according to those sections, may not exceed the maximums permitted in ss. 138.09 and 218.01, respectively."

$12,155 loan. Thorp issued a check for $961.05, made out to Glen Clark and the Credit Bureau of Monroe. Clark endorsed the check and returned it to Steiner, the branch manager of the local Thorp office. Steiner sent the check to the credit bureau, which endorsed the check but returned it to Thorp because it did not want to act as a collection agency. Steiner cashed the check and kept the money.

In June 1978, while preparing to sell their home, the Clarks discovered that the judgments had not been paid. They contacted Thorp, which eventually discovered that Steiner had endorsed and cashed the check. Thorp issued the Clarks a new check for $961.05 on July 12, 1978. Thorp did not offer at that time to pay the interest which had accrued on the judgments since November 23, 1977, nor did it offer to refund the interest the Clarks had paid to Thorp which was attributable to the stolen funds. The Clarks would not accept the check. Glen Clark testified that he asked Thorp's new branch manager to pay the accrued interest on the judgments and to pay the additional abstracting fees he had incurred because the judgments had not been paid, but that the manager said nothing could be done.

On August 29, 1978, the Clarks paid off the loan by returning the July 12 check and writing Thorp a personal check for the balance outstanding on the loan. Thorp's calculation of the payoff amount was based on the assumption that the Clarks had received the full $12,155 they borrowed in November 1977. Thorp did not deduct the stolen $961.05 from the amount of the loan when it calculated the payoff amount.

A certified public accountant and Thorp's branch manager both testified that had Thorp calculated the payoff figure using the amount the Clarks actually received, the payoff figure would have been smaller. The C.P.A. testified that Thorp charged the Clarks $137.56 too much,

which, over the length of the loan, resulted in payment of an annual interest rate of 19.54%.

The Clarks paid the judgment liens, including the additional interest which had accrued, on August 29, 1978. The C.P.A. testified that interest accruing at 7% on $961.05 from November 23, 1977, to August 29, 1978, would equal $51.42.

On August 30, 1978, Thorp discovered the Clarks had not endorsed the July 12 check and reopened the loan account. Thorp did not credit the check against the Clarks' account because it was unendorsed. In October 1978, Glen Clark made a qualified endorsement of the check and Thorp closed the account.

The trial court determined that because Steiner acted within his apparent authority in asking Glen to endorse the check and return it to him, Thorp was bound by Steiner's fraudulent acts in cashing the check and keeping the money. It determined that because the Clarks had not had the use of $961.05 from the date of the loan to the date the loan was paid off, Thorp charged the Clarks interest at 19.54%. The trial court concluded that the Clarks were entitled under sec. 425.305, Stats., to recover the payments they had made on the loan, the check with which they paid off the loan, and the stolen funds, for a total of $13,469.30.[2] It also awarded the Clarks one-third of that amount as an attorney's fee.

The issues on appeal are as follows:

(1) Did Thorp charge a usurious rate of interest?

(2) Did Glen Clark's endorsement of the July 12 check constitute an accord and satisfaction of the claim?

---

[2] Section 425.305, Stats., provides:

(1) In a transaction to which this section applies, the customer shall be entitled to retain the goods, services or money received pursuant to the transaction without obligation to pay any amount.

(2) In addition, the customer shall be entitled to recover any sums paid to the merchant pursuant to the transaction.

(3) Did the overcharge result from a "bona fide error" within the meaning of sec. 425.301(3), Stats?

(4) Did the trial court err in awarding the Clarks $4,490 for attorney fees?

## Usurious Interest Rate

Thorp argues that Steiner's actions in endorsing and cashing the check were not within the scope of his employment or his apparent authority. Thorp argues that it therefore cannot be deemed responsible for them and that the trial court erred in deducting the amount stolen from the amount financed under the loan.

In *Hollingsworth v. American Finance Corp.*, 86 Wis. 2d 172, 271 N.W.2d 872 (1978), a finance company's manager demanded a "commission" of $1,000 in order to set up a loan from the finance company to the plaintiff. The manager later demanded payments of $40 and $500 from the plaintiff which he promised to credit to the plaintiff's account, but kept. He also gave the plaintiff checks from the finance company for auto repairs performed by the plaintiff for the company, took the checks back after the plaintiff had endorsed them, promised to credit them to the plaintiff's account, and kept them. The finance company argued that the manager's acts were done purely in his own interest and were not attributable to the company.

The supreme court stated:

Where a third party reasonably believes, based on the principal's conduct, that an agent has authority to act in a particular transaction, the principal is bound by the agent's acts within the scope of his apparent authority. This rule applies even though the agent commits a fraud or acts against the principal's interests. [Citations omitted.]

*Id.* at 181, 271 N.W.2d at 877. The court reviewed the facts which could have led the plaintiff to believe the

manager was acting for the company. It affirmed the trial court's implicit finding that the company was bound by the manager's acts, including the misappropriations.

Thorp focuses on the question whether Steiner's theft was within the scope of his employment or apparent agency. Under *Hollingsworth*, however, the proper inquiry is "whether the principal's conduct reasonably induced [the plaintiff] to believe that the agent had authority to act for the principal." *Id.* at 183, 271 N.W.2d at 877. If it did so, the agent's acts are attributable to the principal.

Steiner was the manager of Thorp's local office. The loan transaction took place at that office. The Clarks were instructed that they had to pay the judgments in order to borrow money from Thorp. The check for the amount of the judgments was issued by Thorp, was given to the Clarks by Steiner for endorsement, and Steiner took it back from them after Glen Clark endorsed it. Steiner agreed on behalf of Thorp to send the check to the credit bureau to pay the judgments. Glen Clark testified that he believed Steiner had authority to do so. The Clarks could have reasonably believed Steiner had this authority. Thorp is bound by Steiner's actions.

Because Thorp was bound by the acts of its employee, it was under a duty to fully reimburse the Clarks for their losses after it discovered the theft. However, Thorp did not reimburse the Clarks for the interest that had accrued on the judgments since November 1977. The Clarks paid the judgments and the accrued interest themselves. Thorp calculated their payoff figure, however, as though *it* had paid the judgments and charged interest accordingly. Thorp thus retained the money which should have been used to pay the judgments, but collected interest on it from the Clarks as though it had been paid

out. Thorp's collection of interest on money it never loaned to the Clarks effectively increased the interest rate on the money it did loan. The trial court correctly concluded that Thorp charged a usurious rate of interest.

*Accord and Satisfaction*

Thorp contends that Glen Clark's endorsement of the July 12 check, even though it was qualified, constituted an accord and satisfaction of the Clarks' claim. "An 'accord and satisfaction' is an agreement to discharge an existing disputed claim, whether the claim be one arising in contract, tort or otherwise. An 'accord and satisfaction' constitutes a defense to an action to enforce the claim." *Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214, 217 (1979).

Accord and satisfaction is not a defense to a claim of usury under the Consumer Act. The Act prohibits lenders from contracting for or receiving from borrowers more than the maximum legal rate of interest. Secs. 422.201(3) and 138.09(7)(b), Stats. (1977). The prohibition applies to all contracts between lenders and borrowers, not simply to those entered when a loan is made. The protections offered by the Consumer Act would be made hollow if borrowers could be made to pay more interest than allowed by the Act. The court in *Robinson v. Marachowsky*, 184 Wis. 600, 606, 200 N.W. 398, 400 (1924), said: "An accord and satisfaction . . . would require the making of a new contract as a substitute for the old . . . ." Under the Consumer Act, neither the "new contract" nor the old may call for the payment of usurious interest.

Furthermore, the defense of accord and satisfaction is limited to settlements of disputed and unliquidated

claims. *Karp v. Coolview of Wisconsin, Inc.*, 25 Wis. 2d 299, 303, 130 N.W.2d 790, 793 (1964). If the amount due on a claim can be determined by "mere mathematical computation," the claim is liquidated. *E.D. Wesley Co. v. City of New Berlin*, 62 Wis. 2d 668, 676, 215 N.W.2d 657, 662 (1974). A dispute over the defendant's liability for a claim does not change the character of the claim from liquidated to unliquidated. *City of Merrill v. Wenzel Brothers, Inc.*, 88 Wis. 2d 676, 697, 277 N.W.2d 799, 808–09 (1979). Thorp could have determined the amount it owed the Clarks by mathematical computation. The defense of accord and satisfaction is not available to Thorp.

*Bona Fide Error*

Thorp contends that any overcharge of interest was the result of a bona fide error, as defined in sec. 425.301 (3), Stats.[3] It contends that the Clarks are therefore not entitled to the recovery awarded by the trial court.

"[T]he bona fide error defense applies only to violations caused by unintentional acts such as inadvertent clerical errors." *First Wisconsin Nat. Bank v. Nicolaou*, 113 Wis. 2d 524, 532, 335 N.W.2d 390, 394 (1983). "Clerical errors" are errors such as "mistakes in calculations, filing, printing, computer programming, and equipment malfunctions." *Id.* at 534 n. 12, 335 N.W.2d at 395. An error of law is not a bona fide error under sec. 425.301(3), Stats. *Id.* at 532, 335 N.W.2d at 394.

The bona fide error defense, as interpreted by the supreme court in *Nicolaou*, is not available to Thorp. Thorp calculated the Clarks' payoff amount as though it had lent them the amount of the judgment liens when

---

[3] Section 425.301 (3), Stats., provides:

Notwithstanding any other section of chs. 421 to 427, a customer shall not be entitled to recover specific penalties provided in

in fact it had not. This was not merely an unintentional clerical error, "inevitable despite the maintenance of procedures reasonably adopted to avoid" it. *Id.* at 534, 335 N.W.2d at 395.

*Attorney Fees*

The Clarks moved for attorney fees pursuant to sec. 425.308, Stats.[4] The trial court found that the Clarks' attorney spent 167.8 hours prosecuting the case. It found that this was not an unreasonable amount of time. It also found that a reasonable hourly rate would be $60 per hour. It found that the case involved novel and difficult issues and that the attorney evidenced great legal

---

. . . s. 425.305(1) if the person violating chs. 421 to 427 shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

[4] Section 425.308, Stats., provides:

(1) If the customer prevails in an action arising from a consumer transaction, he [or she] shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his [or her] behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney's fee.

(2) The award of attorney's fees shall be in an amount sufficient to compensate attorneys representing customers in actions arising from consumer transactions. In determining the amount of the fee, the court may consider:

(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

(b) The customary charges of the bar for similar services;

(c) The amount involved in the controversy and the benefits resulting to the client or clients from the services;

(d) The contingency or the certainty of the compensation;

(e) The character of the employment, whether casual or for an established and constant client; and

(f) The amount of the costs and expenses reasonably advanced by the attorney in the prosecution or defense of the action.

skill in presenting the case. The trial court concluded, however, that awarding a fee on an hourly basis would be "manifestly unfair" to Thorp. It stated that the unfairness stemmed from the fact that awarding an hourly fee would almost double the judgment. It found that the Clarks' attorney had taken the case on a contingency basis, noted that a normal contingent fee in Wisconsin was one-third of the recovery, and awarded an attorney fee of $4,490.

The Clarks contend that the trial court erred in setting the attorney fees award at one-third of their recovery. We agree and reverse the attorney fees award.

The trial court decided the question of attorney fees before the supreme court decided *Nicolaou, supra.* The record shows that the Clarks and their attorney agreed that if the Clarks lost this lawsuit, they would owe no attorney's fees. However, the record does not show what fee would be paid if they won. The fact that the plaintiff's attorney's fees may equal or exceed the recovery awarded is not a manifest injustice to the defendant warranting a reduction in the fees awarded. *See, e.g., Nicolaou, supra* (plaintiffs recovered $5,193.08 damages; supreme court awarded $20,462.66 attorney fees).

"The primary consideration in establishing the amount of attorney fees is that the award must be sufficient to compensate the attorneys." *Nicolaou,* 113 Wis. 2d at 538, 335 N.W.2d at 397. *Nicolaou* emphasized that the Wisconsin Consumer Act depends upon private lawsuits for enforcement and that private enforcement of the Act will be unsuccessful unless prevailing consumers can expect adequate attorney fee awards. *Id.* at 539, 335 N.W.2d at 397.

We remand for the trial court to determine and award reasonable attorney's fees, including fees for this appeal. *Nicolaou,* 113 Wis. 2d at 541, 335 N.W.2d at 398.

*By the Court.*—Judgment affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.